IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JACQUELYN PEDIGO, on Behalf of Herself and Others Similarly Situated <br><br> Plaintiff, <br><br> vs. <br><br> 3003 SOUTH LAMAR, LLP d/b/a ALLIGATOR GRILL <br><br> Defendant. | § § § § § § § § § § § § § CIVIL ACTION NO. A:08-cv-803-JRN |

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND
NOTICE TO POTENTIAL COLLECTIVE CLASS MEMBERS**

**I. SUMMARY**

Alligator Grill's pay practices violate the minimum and overtime wage requirements of the Fair Labor Standards Act (FLSA). Specifically, Alligator Grill pays its waiters and bartenders (collectively "servers") less than the full statutory minimum wage and requires them to share their tips with ineligible employees. In addition, Alligator Grill charges its employees for uniforms and fails to pay appropriate overtime wages for hours worked in excess of forty in a workweek. Because Alligator Grill applies these improper policies to all its servers, Plaintiffs and all other Alligator Grill servers are entitled to the full minimum wage for each hour worked, as well as overtime wages calculated at one and a half the regular rate of pay.[1]

In order to allow the employees similarly situated to Pedigo to recover their unpaid minimum and overtime wages, the Court should conditionally certify this case as a collective action and approve the issuance of notice to the putative class members.[2]

---

[1] Jacquelyn Pedigo (Pedigo) and the twelve (12) opt-in claimants are collectively referred to as "Plaintiffs."
[2] In support of this motion Pedigo submits, as Exhibits 1-5 respectively, the declarations of Jacquelyn Pedigo (hereinafter cited as Pedigo Decl.), Tracy Barbarossa (hereinafter cited as Barbarossa Decl.), Joshua Roberts

## II. BACKGROUND

### A.     Factual Background

Alligator Grill operates a Cajun-style restaurant in Austin, Texas. *Pedigo Decl., ¶ 2.* Jacquelyn Pedigo (Pedigo) is a former server at Alligator Grill. *Id.* Joshua Roberts (Roberts), Jacqueline Knight (Knight), Angela Fotiades (Fotiades), and Tracy Barbarossa (Barbarossa) still work as servers at Alligator Grill. *Barbarossa Decl. ¶ 2, Roberts Decl. ¶ 2, Knight Decl., ¶ 2,* and *Fotiades Decl., ¶ 2.* Alligator Grill pays its servers a direct wage that is less than the minimum wage, specifically $2.13 per hour. *Pedigo Decl., ¶ 3, Barbarossa Decl., ¶ 3, Roberts Decl., ¶ 3, Knight Decl. ¶ 3,* and *Fotiades Decl., ¶ 3.* In addition to their direct wage, Alligator Grill's servers earn tips from the restaurant customers. *Id.* However, Alligator Grill does not allow its servers to keep all of the tips they earn. *Id.* Rather, Alligator Grill requires its servers to contribute a portion of their tips equal to 4% of their total net sales to a mandatory tip pool. *Id.* The employees who share in the tip pool include the expediters (expos), hostesses, dishwashers, prep cooks, and non-service bar backs. *Pedigo Decl., ¶ 3, Barbarossa Decl., ¶ 11-12, Fotiades Decl., ¶ 4 and 6, Knight Decl. ¶ 3,* and *Roberts Decl., ¶ 3*.

Alligator Grill's Team Member Manual spells out the tip pool policy. (*Exhibit 6, p. 5*) Alligator Grill's tip pool policy is "mandatory." (*Exhibit 7* - the deposition of Steven Wimberly, p. 40, lines 12-20).[3] The tip pool policy applies to all servers, i.e. no one is exempt from this policy. (*Exhibit 8* – the deposition of Paul Blandford, p. 47, lines 8-16)[4]

---

(hereinafter cited as Roberts Decl.), Jacqueline Knight (hereinafter cited as Knight Decl.), and Angela Fotiades (hereinafter cited as Fotiades Decl.).

[3] Steven Wimberly is the owner of Alligator Grill. *(Exhibit 7, p. 5, lines 7-9)(*hereinafter *"Wimberly Depo")*
[4] Paul Blandford is the General Manager of Alligator Grill. *(Exhibit 8, p. 5, lines 1-3)(*hereinafter *"Blandford Depo")*

Similarly, Alligator Grill paid its servers a wage of $3.19 per hour for all "overtime hours."[5] (*Exhibit 9* – the deposition of David Gebser, p. 39, lines 20-25);[6] s*ee also, Pedigo Decl. ¶ 7, Roberts Decl. ¶ 7, Knight Decl., ¶ 7,* and *Barbarossa Decl. ¶ 12*. However, Alligator Grill now concedes that it was required to pay its servers between $4.71 - $5.41 per hour for all overtime hours. *Wimberly Depo. p. 42, lines 9-20* and *Gebser Depo., p. 39, lines 20-25*.

Finally, Alligator Grill required its servers to purchase uniforms. *Pedigo Decl. ¶ 8, Roberts Decl. ¶ 8, Knight Decl., ¶ 8, Fotiades Decl., ¶ 7,* and *Barbarossa Decl. ¶ 13*. Specifically, Alligator Grill charged its servers $7.50 per shirt and/or apron. *Id.* This requirement is set forth in Alligator Grill's Team Member Manual (*Exhibit 6, p. 12*); see also, *Blandford Depo. p. 37, lines 2 - 20*.

## B.  Legal Background

The FLSA requires employers to pay employees their wages at a minimum hourly rate – currently $7.25 – for each hour worked. *See* 29 U.S.C. § 206(a).[7] A partial exception to this rule exists for "tipped employees." 29 U.S.C. § 203(m) & § 203(t). An employer can pay tipped employees as little as $2.13 per hour provided certain conditions are met. *Id.* at § 203(m). However, an employer must comply with the requirements of Section 203(m) "precisely" in order to claim a tip credit. *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334, at *1 (S.D.Tex. 2006) (the requirements of Section 203(m) are strictly construed). *See also*, Case No. A 08-CA-190; and *Scherrer v SJG Corp. d/b/a The Salt Lick* (W.D. Tex. Oct. 10, 2008)(Sparks, J.)(*Exhibit 10*).

---

[5] Alligator Grill changed its 'overtime' pay policy in April 2009 after a Dept. of Labor audit concluded that it had paid its servers incorrectly. (*Wimberly Depo., pgs. 42 – 43*)
[6] David Gebser is the bookkeeper/accountant for Alligator Grill. (*Exhibit 9, pgs. 7 - 8)(*hereinafter *"Gebser Depo"*)
[7] Prior to 7/24/07, the minimum wage was $5.15 per hour. From 7/24/07 to 7/24/08, the minimum wage was $5.85 per hour. From 7/24/08 to 7/24/09, the minimum wage was $6.55 per hour. *See* Fair Minimum Wage Act of 2007, Pub. L. 11-28 (May 25, 2007) & 29 U.S.C. § 206(a) (2006).

Among other things, an employer must ensure the employees make at least the minimum wage when the wages paid by the employer and the tips are combined.  29 U.S.C. § 203(m).  The employer must also inform the employees of the tip credit.  *Id.*  In addition, the employees must keep all the tips they receive other than those contributed to a valid tip pool.  *Id.*  If the employees are required to share their tips with employees who do not customarily and regularly receive tips, the employer cannot claim any tip credit.  *See, e.g., Myers v. Copper Cellar Corp.*, 192 F.3d 546, n. 4 (6th Cir. 1999); *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *14 (S.D.N.Y. March 30, 2006); *Ayers v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 308-09 (S.D.N.Y. 1998); *Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98 (E.D. Tenn. 1979).

"[T]he employer bears the burden of showing the applicability of the tipped employee provisions."  *Smith v. Noso, Inc.*, 2007 WL 2254531, at *4 (M.D. Fla. Aug. 3, 2007) (*citing Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979) ("On May 1, 1974, the [FLSA] was amended to place the burden of proving the amount of tips received on the employer for purposes of allowing the ... tip credit.").  "Unless the employer satisfies its burden of showing the applicability of the tip credit, the employees are 'entitled to the full minimum wage for every hour worked.'" *Noso, Inc.,* 2007 WL 2254531, at *4 (*citing Barcellona*, 597 F.2d at 467).

Under the law, Alligator Grill can only require its servers to contribute to a tip pool from which other customarily tipped employees draw.  29 U.S.C. § 203(m); *see also, Myers*, 192 F.3d at 551.  The dishwashers, prep cooks, and non-service bar backs however, are not eligible to participate in the tip pool because they do not have direct interaction with the customers and do not directly participate in the delivery of customer service.  *Id.*  Because Alligator Grill's dishwashers, prep cooks, and non-service bar backs are not eligible to participate in the tip pool, Alligator Grill's tip pool policy violates the tip credit requirements of Section 3(m).  Therefore,

Alligator Grill's failure to pay its servers a direct wage of at least the full statutory minimum wage for all hours worked violated the minimum wage provisions of the FLSA.

Moreover, Alligator Grill's failure to pay its servers the appropriate overtime wage violates the overtime wage provisions of the FLSA. Specifically, Alligator Grill paid its servers $3.19 per hour for all hours worked in excess of forty in a workweek. *Gebser Depo. p. 39, lines 20-25*. However, 29 U.S.C § 203(b) required Alligator Grill to pay its tipped employees one and a half the 'regular rate of pay' for all overtime hours. The current overtime rate for tipped employees is $5.76 per hour (i.e. $7.25 x 1.5 = $10.88 - $5.12 = $5.76). Accordingly, Alligator Grill's failure to pay its servers the appropriate overtime rate constitutes a violation of the FLSA.

Finally, Alligator Grill's policy of charging its servers for uniforms violates the minimum wage provisions of the FLSA because, by doing so, it effectively reduced Plaintiffs' wages below the minimum wage of $2.13 per hour as required by the FLSA. 29 C.F.R. § 531.32(c).

### III. ARGUMENT

#### A.   THE FLSA AUTHORIZES COLLECTIVE ACTIONS

The FLSA provides that employees have the right to bring an action "for and in behalf of …themselves and other employees similarly situated." 29 U.S.C. § 216(b). Actions pursued in such a representative capacity are referred to as "collective actions." Federal courts in Texas have a long tradition of using the collective action procedure to protect employees who are denied the wages owed under the law. *See, e.g., Riojas v. Seal Produce, Inc.* 82. F.R.D. 613, 619 (S.D. Tex. 1979); s*ee also, Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 170 (1989)("A collective action allows…plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged…activity."). However, these

benefits depend upon the potential class members' receipt of a notice, which is "timely, accurate and informative." *Blake v. Colonial Savings, FA*, 2004 WL 1925535 (S.D. Tex. August 16, 2004)(J. Harmon)(*citing Sperling,* at 172).

### B.  THE LEGAL STANDARD (SIMILARLY SITUATED).

The Fifth Circuit has identified two different procedures used by courts to determine whether to facilitate notice. *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1213 (5th Cir. 1995); *Kaluom v. Stolt Offshore, Inc.*, 474 F.Supp.2d 866, 870-71 (S.D.Tex. 2007)(Kent, J.). The first approach – the *Shushan* method – is premised upon a class action filed under Federal Rule of Civil Procedure 23 and espouses the view that the court should look to the familiar concepts of "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. *Mooney*, 54 F.3d at 1214 (*citing Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990)). However, because the time consuming Rule 23 mechanism is antithetical to the FLSA's policy that potential plaintiffs receive timely notice, "the *Shushan* approach is unjustifiably punitive." *Kaluom*, 474 F.Supp.2d at 872.

The "two-step" method – involves a dual step analysis of the FLSA § 16(b)'s "similarly situated" requirement. *Mooney,* 54 F.3d at 1214; *Kaluom*, 474 F.Supp.2d at 871. The two-steps consist of a lenient "conditional certification" decision, followed by a more rigorous analysis of the similarly situated issue. *Mooney,* 54 F.3d at 1214; *Kaluom*, 474 F.Supp.2d at 871.

Indeed, the vast majority of courts apply the "two-step" method. *See, e.g., Theissen,* 267 F.3d at 1105; *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F. 2d 1208, 1219 (11th Cir. 2001). In particular, courts in the Fifth Circuit favor the two-step approach. *Kaluom*, 474 F.Supp.2d at 871; *Bernal v. Vankar Enterprises, Inc.,* 2008 WL 791963 *3 (W.D. Tex. March 24, 2008).

### C.     WHEN ARE POTENTIAL CLASS MEMBERS "SIMILARLY SITUATED"?

"Similarly situated," in § 216(b) parlance, does not mean "identically situated." *See Riojas*, 82 F.R.D. at 616.  Therefore, "[w]hether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations." *Donohue v. Francis Services, Inc.*, 2004 WL 1161366, *2 (E.D.La. May 24, 2004).

Instead, a FLSA collective class determination is appropriate when there is "a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Crain v. Helmrich & Payne Int'l Drilling Co.*, 1992 WL 91946, *2 (E.D.La. April 16, 1992).  Thus, a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Id.*; *see also*, *Wyatt v. Pride Offshore, Inc.*, 1996 WL 509654, *2 (E.D.La. Sept. 6, 1996).  In making this determination, "the district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. Fla. Dept. of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

To impose a strict standard of proof at the notice stage would unnecessarily hinder the development of collective actions and, thereby, would serve to undermine the "broad remedial goals" of the FLSA.  *Garner v. G.D. Searle*, 802 F.Supp. 418, 422 (M.D. Ala. 1991); *Sperling*, 118 F.R.D. at 407, aff'd, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989)("Notice to absent class members need not await a conclusive finding of 'similar situations.'").  Instead, the record need only be "sufficiently developed . . . to allow court-facilitated notice" based upon

"substantial allegations." *Id.*; *see also*, *Bernal* at *3*(the decision to certify is based only on the pleadings and affidavits submitted). Thus, the court's decision is usually made "using a fairly lenient standard" and is "based only on the pleadings and any affidavits which have been submitted." *Mooney*, 54 F. 3d at 1214. Evaluation under the lenient "similarly situated" standard "typically results in 'conditional certification' of a representative class" and the issuance of a court approved notice. *Id*; *Clarke v. Convergys Customer Management Group, Inc.*, 370 F.Supp.2d 601, 606 (S.D.Tex. 2005)(Harmon, J.)(citing *Mooney*, 54 F. 3d at 1214). Allowing early notice and full participation by the opt-ins, "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v. Hoffmann-LaRoche Inc.*, 118 F.R.D. at 406.

> **D. THE ISSUANCE OF NOTICE IS PROPER IN THIS CASE BECAUSE THE POTENTIAL CLASS MEMBERS ARE SIMILARLY SITUATED IN TERMS OF JOB DUTIES AND PAY PROVISIONS.**

In this case, Pedigo's complaint provides substantial allegations detailing Alligator Grill's illegal payment scheme. *(Docket Entry #22)* Pedigo describes Alligator Grill's illegal tip pool, uniform deduction and overtime wage practices, and explains why these actions constitute violations of the FLSA. Given the allegations in the complaint, this Court would be justified in approving notice "on the basis of the pleadings alone." *Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*, 2006 WL 1007542, *1 (S.D.Tex. April 17, 2006)(Ellison, J.)(emphasis added; citations omitted). Nonetheless, Pedigo provides substantial evidentiary support for her motion. (*See Exhibits 1-10*). The attached declarations, depositions, and documentary evidence well establish that the wage policies were mandatory, applied to all members of Alligator Grill's service staff, that other servers wish to "opt-in," and that they are "similarly situated" to Pedigo. Pedigo readily meets the lenient standard for court facilitation of a FLSA collective action.

*1. Other Similarly Situated Employees May Desire to Opt In.*

That other similarly situated employees desire to opt-in to this action is manifest from the record. (*See Exhibits 1 through 5*) Similarly, in addition to Pedigo, eleven other servers have already joined this case. (*Docket Entry Nos. 3 and 10*). Courts routinely consider the presence of additional consents as evidence supporting conditional certification. *See*, *e.g.*, *Shaffner,* 2006 WL 1007542 at *1; *see also*, *Thiessen v. General Electric Capital Corp.*, 996 F.Supp.1071(D. Kan.1998) and *Sperling v. Hoffman-La Roche,* 118 F.R.D. 392, 406 (D.N.J.1988)(same). Accordingly, it is clear that there are other similarly situated servers who may desire to opt-in.

*2. Other Potential Class Members are Similarly Situated With Respect to Their Job Requirements and Pay Provisions.*

The violations alleged by Pedigo were suffered across the board by Alligator Grill's servers. Alligator Grill's servers, like Pedigo, routinely wait on Alligator Grill's customers, take orders and serve food and drinks to Alligator Grill's customers. *Pedigo Decl., ¶ 2, Knight Decl., ¶ 2, Barbarossa Decl., ¶ 2, Roberts Decl. ¶ 2,* and *Fotiades Decl., ¶ 2*. All of Alligator Grill's servers earn a direct wage of $2.13 per hour plus tips. *Id at ¶ 3.* All of Alligator Grills' servers surrender a percentage of their tips to Alligator Grill's tip pool. *Id.* Similarly, Alligator Grill pays all of its servers an overtime wage of $3.19 per hour, and all are charged for uniforms. *Pedigo Decl., ¶ 7-8, Knight Decl., ¶ 7-8, Roberts Decl., ¶ 7-8, Barbarossa Decl., ¶ 12-13,* and *Fotiades Decl., ¶ 7.* In short, all of Alligator Grill's servers have typically the same work experience and are subject to the same pay provisions. Therefore, all of Alligator Grill's servers are similarly situated with respect to the relevant pay practices and Plaintiffs more than satisfy the "lenient" standard for collective action notice. *Mooney*, 54 F.3d at 1213-14; *Metz v. Treetop Enters, Inc.*, 1999 U.S. Dist. LEXIS 18386, *7 (N.D. Ala. 1999); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

### E. THE NEED FOR EXPEDITED ACTION.

In a collective action under the FLSA, when additional plaintiffs file their consents with the court, the filing does not "relate back" to the original filing date of the complaint for the purposes of the statute of limitations. 29 U.S.C. § 256. Therefore, every day that passes can result in a progressive diminishing of the amount of overtime wages potential plaintiffs could recover in this action. It may eliminate the claims of some potential plaintiffs completely. To minimize the prejudice the potential class members are suffering on a daily basis, Pedigo requests the Court authorize the issuance of a notice to all current and former servers employed by Alligator Grill during the three (3) year period preceding the filing of this suit to the present (in the form attached as *Exhibit 11*) and to order Alligator Grill to provide Plaintiffs with a list of all waiters and bartenders who have worked at Alligator Grill during the period of 10/28/05 to the present in electronic format.

### IV. CONCLUSION

Pedigo has met the lenient burden for conditional certification and the issuance of court-approved notice. Each day that passes is another day's pay that the workers victimized by Alligator Grill's unlawful wage policies will never recover. Accordingly, Pedigo respectfully requests the Court: 1) conditionally certify this action as a collective action; 2) authorize dissemination of the suggested notice to potential members of this collective action; 3) order production of the names, addresses and telephone numbers of the potential class members in order to efficiently distribute the suggested notice; and 4) award Plaintiffs all other relief to which they may be justly entitled.

                                                Respectfully submitted,

                                                **DEBES LAW FIRM**

                                                ***/s/ ROBERT R. DEBES, JR.***

                              By: _____
                                                Robert R. Debes, Jr.
                                                Texas State Bar No. 05626150
                                                Federal I.D. 12308
                                                17 South Briar Hollow Lane, Suite 302
                                                Houston, Texas 77027
                                                Telephone: (713) 623-0900
                                                Telecopier: (713) 623-0951
                                                bdebes@debeslaw.com

                                                **COUNSEL FOR PLAINTIFF**

**OF COUNSEL:**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch
Texas State Bar No. 24001807
1415 Louisiana Street, Suite 2125
Houston, Texas 77002
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com

                                      **COUNSEL FOR PLAINTIFFS**

### CERTIFICATE OF CONFERENCE

      I conferred with opposing counsel in a good-faith attempt to resolve the subject matter of the foregoing motion but we were unable to come to a resolution.

                                              /s/ **Robert R. Debes, Jr.**
                                              _____
                                              Robert R. Debes, Jr.

## CERTIFICATE OF SERVICE

    A copy of *Plaintiff's Motion for Conditional Certification and Notice to Potential Class Members* was served on all parties via the Court's electronic filing system on October 1, 2009.

                                               **/s/ Robert R. Debes, Jr.**
                                               Robert R. Debes, Jr.