UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JACQUELYN PEDIGO, on Behalf   )
of Herself and Others         )
Similarly Situated,           )
                              )
            Plaintiffs,       )   CIVIL ACTION
                              )   NO. 1:08-cv-803JRN
VS.                           )
                              )
3003 SOUTH LAMAR, LLP         )
D/b/a ALLIGATOR GRILL,        )
            Defendant.        )             ORIGINAL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF

STEVEN WIMBERLY

MAY 20, 2009

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    ORAL AND VIDEOTAPED DEPOSITION OF STEVEN WIMBERLY, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 20th day of May, 2009, from 9:59 a.m. to 11:32 a.m., before Cynthia Warren, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Orr & Olavson, 804 Rio Grande Street, Austin, Texas 78701, pursuant to the Federal Rules of Civil Procedure and/or the provisions stated on the record.

EXHIBIT 7

```
1      Q.   Tell us your full name, sir.
2      A.   Steven Wimberly.
3      Q.   And is Steven with a V or a P-H?
4      A.   V.
5      Q.   Your middle initial or middle name?
6      A.   I don't have one.
7      Q.   You are the owner of the Alligator Grill; is
8  that right?
9      A.   Yes.
10     Q.   And to put your role in perspective for this
11 jury, the -- you and your wife, I guess, Nancy Wimberly,
12 are the shareholders in an entity known as 3003 South
13 Lamar, LLP; is that right?
14     A.   That's right.
15     Q.   And 3003 South Lamar, LLP has filed an assumed
16 name certificate to do business as the Alligator Grill;
17 is that right?
18     A.   That's correct.
19     Q.   For purposes of today's deposition, can you and
20 I have an agreement that if I say the Alligator Grill
21 I'm referring to the restaurant that you conduct
22 business at through the 3003 South Lamar entity?  Is
23 that okay?
24     A.   Yes.
25     Q.   Thank you very much.  Have you ever given your
```

1  currently, you authorized it, correct?
2       A.   Yes.
3       Q.   You instruct Mr. Gebser and/or Mr. Blanford to
4  enforce it, right?
5       A.   Right.
6       Q.   Earlier you talked about a voluntary tip pool,
7  right?
8       A.   I was speaking of that tip pool that existed
9  that was directed by management but was violated on a
10 voluntary basis.  It just was helter skelter and didn't
11 amount to anything.
12      Q.   Okay.  The tip pool policy that's in effect at
13 the Alligator Grill today is a mandatory tip pool
14 policy, right?
15      A.   Yes.
16      Q.   In other words, the wait staff and the
17 bartenders, people who receive direct tips from the
18 patrons, are required to contribute 4 percent of their
19 net sales to the tip share?
20      A.   That's correct.
21      Q.   Okay.  As I understand it, after this lawsuit
22 was filed you looked into the legality, I guess, of the
23 tip pool policy; is that right?
24      A.   I think we -- before it was instituted, we
25 researched the legality of it.

1  10:57 a.m.)

2          THE VIDEOGRAPHER:  This is the start of

3  Tape 2 of the Wimberly deposition.  The time is 10:57

4  a.m. and we are back on the record.

5     Q.   (By Mr. Debes)  Mr. Wimberly, we've had an

6  opportunity to take a short break.  Are you ready to

7  continue?

8     A.   Yes.

9     Q.   I just have one or two more questions.  On

10 Exhibit No. 5 it appears to reflect that my clients were

11 paid $3.19 an hour for each hour of overtime worked; is

12 that right?

13    A.   Right.

14    Q.   And that apparently Mr. Gebser concluded that

15 the appropriate overtime rate that they should have been

16 paid was between 4.71 an hour and it looks like 5.41 an

17 hour?

18    A.   Right.

19    Q.   Is that right?

20    A.   That's correct.

21    Q.   After Mr. Gebser -- strike that.

22         In light of this lawsuit, has the

23 Alligator Grill changed its policy with regard to the

24 payment of overtime wages?

25    A.   Yeah, I think that we had made a mistake, and

1  it was an honest error but still made a mistake, and
2  made an effort to correct it.
3      Q.  Okay.  And has the Alligator Grill gone back
4  and paid its former employees who worked there in the
5  last two or three years?
6      A.  I think that what we've done is we've been
7  through a labor audit and have gone back and corrected
8  these, not only for these group of employees but all of
9  them.  And I can't remember what our total obligation
10 was, but it seems like it was $480 or some number that
11 is -- although we owe it, is relatively insignificant.
12     Q.  And when did you go through the audit, the
13 labor audit?
14     A.  We just got our final report three or four
15 weeks ago.
16     Q.  And this is an audit that was performed by the
17 Department of Labor?
18     A.  Yes.
19     Q.  The wage and hour division?
20     A.  I mean, we naturally assumed that it was
21 probably as a result of this lawsuit, that maybe there
22 was a complaint made to them.
23     Q.  Okay.  It wasn't something that you-all had
24 contacted the Department of Labor and asked them to come
25 and do a self-audit?