UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JACQUELYN PEDIGO, on Behalf      )
of Herself and Others            )
Similarly Situated,              )
                                 )
            Plaintiffs,          )   CIVIL ACTION
                                 )   NO. 1:08-cv-803JRN
VS.                              )
                                 )
3003 SOUTH LAMAR, LLP            )
D/b/a ALLIGATOR GRILL,           )
            Defendant.           )                ORIGINAL

************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

DAVID GEBSER

MAY 20, 2009

************************************************

ORAL AND VIDEOTAPED DEPOSITION OF DAVID GEBSER, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 20th day of May, 2009, from 11:43 a.m. to 12:43 a.m., before Cynthia Warren, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Orr & Olavson, 804 Rio Grande Street, Austin, Texas 78701, pursuant to the Federal Rules of Civil Procedure and/or the provisions stated on the record.

EXHIBIT 9

1  previously I only worked for the old Alligator Grill.
2      Q.   Are you a W-2 employee?
3      A.   Yes, sir.
4      Q.   Do you have any ownership interest or receive
5  any participation from profits?
6      A.   No, sir.
7      Q.   We had the benefit of visiting with
8  Mr. Wimberly before your deposition this morning.  I
9  understand generally the hierarchy and the management of
10 the restaurant, but I want to make sure that I
11 understand your role.  First of all, do you participate
12 in the management of the restaurant or its employees?
13     A.   In my estimation, no.
14     Q.   For instance, do you interview potential
15 employees, servers, cooks, that type of thing?
16     A.   No, sir.
17     Q.   Do you have the authority to hire and/or fire
18 any employees?
19     A.   No, sir.
20     Q.   Do you make any of the schedules that the
21 employees have to follow?
22     A.   No, sir.
23     Q.   Why don't you summarize, the best you can, your
24 role for the Alligator Grill.
25     A.   Record-keeping, paperwork, bookkeeping and

1   accounts payable, payroll. Sort of keep an eye on the
2   managers for Steve, but I have my own office there and
3   they've got their office.
4       Q.   The managers -- as I understand it, the general
5   manager is Paul Blanford?
6       A.   Blanford, yes, sir.
7       Q.   Who are the other managers?
8       A.   We've got two hourly managers, Lynde Rolhoff
9   and Adrian Victorian.
10      Q.   When did Adrian Victorian become a manager --
11  assistant manager, if you know?
12      A.   Late winter, the best of my ...
13      Q.   Just a couple of months ago, six months ago?
14      A.   Yes, sir. January, February, something like
15  that.
16      Q.   Robb Meyer is a former assistant manager; is
17  that right?
18      A.   Yes, sir.
19      Q.   Is Mr. Meyer still employed there?
20      A.   No, sir.
21      Q.   Now, I had an opportunity to go through some of
22  the policies and procedures, training manuals that the
23  Alligator Grill has, and I want to ask you a few
24  questions about those. First of all, do you know
25  anything about the policies and procedures at the

1   Q.   So you mailed checks to the ex-employees?
2   A.   Yes, sir.
3   Q.   And you handed out checks to the current
4   employees?
5   A.   Handing out, yes, to the current.
6   Q.   What about the 11 or so folks that I represent
7   in this case, have they been given a check?
8   A.   I believe that two of them were offered them
9   yesterday evening after I had left. I left the
10  information with Paul.
11          MR. DEBES: I'm just going to instruct --
12  I'm going to ask as a courtesy, but I'm really going to
13  instruct it, that no checks be tendered to my clients.
14          MR. ORR: That's fine. You heard that?
15          THE WITNESS: I heard that.
16          MR. ORR: We're going to do that. We're
17  not going to tender any checks.
18          THE WITNESS: That's not a problem.
19          MR. DEBES: Thank you.
20  Q.   (By Mr. Debes) Whose decision was it to pay
21  the servers $3.19 an hour for overtime hours?
22  A.   It would have to be mine.
23  Q.   And presumably you know that that's an error,
24  correct?
25  A.   I do now, yes, sir.