IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2009 OCT 30  AM 10: 46

| | | |
|---|---|---|
| JACQUELYN PEDIGO, on Behalf of Herself and Others Similarly Situated, Plaintiff, | § § § § | |
| v. | § | CAUSE NO. A-08-CA-803-JRN |
| 3003 SOUTH LAMAR, LLP, d/b/a ALLIGATOR GRILL, Defendant. | § § § § | |

## ORDER

Before the Court in the above-entitled and styled cause of action are Plaintiff's Opposed Motion for Conditional Certification and Notice to Potential Class Members (Doc. #31), filed October 1, 2009; Defendant's Response (Doc. #33), filed October 12, 2009; and Plaintiff's Reply (Doc. #37), filed October 15, 2009. After a studied review of the parties' arguments and the applicable law, the Court is of the opinion that the Motion to Conditionally Certify should be granted.[1]

---

[1]  A district court has wide discretion in deciding whether to certify a class. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). "[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action. Sometimes the issues are plain enough from the pleadings . . .'" *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). Therefore, "a district court is not obliged to conduct an evidentiary hearing" on the issue of class certification. *Bradford v. Sears, Roebuck & Co.*, 673 F.2d 792, 795 (5th Cir. 1982); *Merrill v. Southern Methodist Univ.*, 806 F.2d 600, 608 (5th Cir. 1986).

Here, neither party has requested an evidentiary hearing. *See*, L.R. CV-7(g)("A movant or respondent may specifically request an oral hearing, but the allowance of an oral hearing shall be within the sole discretion of the judge to whom the motion is assigned."). Additionally, the Court is of the opinion that the issues determining whether a class can be conditionally certified are clear enough such that an evidentiary hearing is unnecessary.

I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant 3003 South Lamar, LLP (hereinafter "Defendant") operates a Cajun-style restaurant in Austin, Texas, which is doing business as Alligator Grill. *See*, Pl. Mot. (Doc. #31) at 2. Plaintiff and named putative class representative Jacquelyn Pedigo (hereinafter "Plaintiff") is a former waitress and bartender at Alligator Grill. *Id.* and Ex. 1. On October 29, 2008, Plaintiff filed the present lawsuit alleging Defendant violated numerous provisions of the Fair Labor Standards Act (FLSA).

It is necessary to preface that the FLSA requires employers to pay employees a minimum wage of $7.25 an hour. *See*, 29 U.S.C. §206(a)(1)(C). However, under section 203(m), employers are permitted to take advantage of a "tip credit" in order to meet the federal minimum wage requirements with respect to tipped employees. *See*, 29 U.S.C. §293(m)(1)-(2). Subject to certain conditions, an employer may pay a tipped employee $2.13 per hour if the employee makes at least the minimum wage when the wages paid and the tips earned are combined. *Id.*

Specifically, there are two prerequisites employers must meet to be eligible for the "tip credit": (1) the employer must inform the employee of the provisions in section 203(m); and (2) all tips received by such employee must be retained by the employee, "except that [§203(m)] shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.* If the employer fails to meet both prerequisites, it is not eligible to take the tip credit, and as a result, the employer must pay each employee the full minimum wage required under section 206. Additionally, numerous courts have held that if the employees are required to share their tips with employees who do not customarily and regularly receive tips then the employer cannot claim the tip credit. *See*, Pl. Mot. at 4 (citations omitted). Lastly, it is important to note that under section

2

207, an employer is still required to pay its tipped employees one and a half the regular rate of pay, *i.e.* $5.76 per hour, for all overtime hours worked. *See*, 29 U.S.C. §207(a)(1).

As indicated, in the present case, Plaintiff alleges that Defendant violated three specific provisions of the FLSA. First, it is undisputed that Defendant pays its servers a direct wage of $2.13 per hour under the tip credit rule. *See*, Pl. Mot. at 2. However, the employee handbook explicitly requires every server to contribute a portion of their tips equal to 4% of their total net sales to a mandatory tip pool. *Id.* and Ex. 2. Plaintiff claims that the problem with this compensation system is that the employees who share in the tip pool impermissibly include expediters (expos), hostesses, dishwashers, prep cooks and non-service bar backs because such employees do not customarily and regularly receive tips. *Id.* According to Tracy Barbarossa, a current waitress at Alligator Grill, this impermissible tip pool practice is evidenced by: (1) Defendant's pay report; (2) employees' own admissions; and (3) the fact that Defendant "gives out two paychecks to those employees who receive part of . . . the tip share: one check for the employee's hourly wage, and another check for the employee's share of the tip pool monies." *See*, Pl. Mot. at Ex. 2; Ex. 1-B. As such, Plaintiff alleges that inclusion of dishwashers, prep cooks, and non–service bar backs in the tip pool violates the tip credit requirements of Section 3(m), and Defendant's resulting failure to pay its serves a direct wage of $7.25 per hours violates the minimum wage provisions of the FLSA. *Id.* at 4-5.

Second, it is undisputed that Defendant formerly failed to pay its servers and bartenders the appropriate overtime wages in violation of the FLSA overtime wage provisions. *Id.* at 5; Ex. 7, p. 42, lines 9-13; Ex. 9, p. 39, lines 20-25. [2] Finally, it is further undisputed that Defendant formerly

---

[2] Mr. Wimberly testified that after the present lawsuit was filed, Defendant changed its policy with regard to the amount of overtime wages paid. *See*, Pl. Mot. at Ex. 1; Ex. 7, p. 42, lines 22-25.

3

required its servers to wear a particular shirt and/or apron, and that Defendant required its servers to pay $7.50 per shirt or apron. *See*, Pl. Mot. at Ex. 6, p.3 and 12; Ex. 8, pp. 35-37.[3] Plaintiff claims that this requirement effectively reduced servers' and bartenders' wages below the minimum wage required under the FLSA. *Id.* at 5 (citing 29 C.F.R. §531.32).

Accordingly, on June 22, 2009, Plaintiff filed her Third Amended Complaint alleging that Defendant: (1) failed to pay Plaintiff the minimum wage required by the FLSA; (2) failed to pay Plaintiff the appropriate overtime wages required under the FLSA; and (3) made illegal deductions from Plaintiff's paycheck for uniforms in violation of the FLSA. *See*, Clerk's Docket #21. Based upon these three alleged FLSA violations, Plaintiff's present motion requests this Court to conditionally certify this case as a collective action and approve the issuance of notice to the putative class members in order, "to allow the employees similarly situated to [Plaintiff] to recover their unpaid minimum and overtime wages." *See*, Pl. Mot. at 1.

## II. DISCUSSION

Section 216(b) of the FLSA creates a cause of action against employers who violate the overtime compensation and/or minimum wage requirements mandated in sections 206-207 discussed above. Section 216(b) also permits an employee to bring suit against an employer on "behalf of himself . . . And other employees *similarly situated*," *i.e.* a collective action. 29 U.S.C. §216(b)(italics added).[4] "Although the Fifth Circuit has declined to adopt a specific test to determine

---

[3] Paul Blanford, general manager of Alligator Grill, testified that after the present lawsuit was filed, Defendant stopped requiring employees to purchase uniforms and aprons. *See*, Pl. Mot. at Ex. 8, p. 37, lines 1-20.

[4] Employees who wish to participate in a §216(b) collective action must affirmatively "opt in" by filing with the court a written consent to become a party. *Id.* To contrast, in a Rule 23 proceeding, persons within the class description are automatically considered class members and

when a court should certify a class or grant notice in a §216(b) action, most federal courts . . . have adopted the *Lusardi* test when deciding these issues." *Morales v. Thang Hung Corp.*, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009)(citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), overruled on other grounds, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91(2003)).[5] Important to the present analysis, this Court recently adopted the *Lusardi* test as the method for determining whether to certify a collective action under section 216(b). *See, Gandhi v. Dell, Inc.*, No. A-08-CA-248-JRN, 2009 WL 1940144 (W.D. Tex. July 2, 2009)(Report and Recommendation adopted on August 4, 2009).

### A.   THE *LUSARDI* TEST

Under the *Lusardi* test, a district court approaches the question of whether the potential plaintiffs are "*similarly situated*" through an *ad hoc* two-stage analysis. *Mooney*, 54 F.3d at 1213. The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage."*Morales*, 2009 WL 2524601, at *2 (citing *Badgett v. Tex. Taco Cabana, L.P.*, 2006 WL 2934265, at *1 (S.D. Tex. Oct. 12, 2006)). "In the first stage, the Court must make an initial determination whether notice of the action should be sent to potential [opt-in] class members. This determination is based solely on the pleadings and affidavits."*Bernal v. Vankar Enter., Inc.*, 2008 WL 791963, at *3 (W.D. Tex.

---

must "opt out" of the suit if they do not wish to participate, which is a "fundamental, irreconcilable" difference from §216(b). *Lachappelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

[5]District Courts within the Fifth Circuit, and District Courts within the Western District in particular, uniformly apply the *Lusardi* test. *See, e.g, Kuperman v. ICF Intern.*, 2008 WL 4809167, at *5 (E.D. La. Nov. 3, 2008); *Valcho v. Dallas County Hosp. Dist.*, 574 F.Supp.2d 618, 621 (N.D. Tex. Aug. 19, 2008); *Treme v. HKA Enter., Inc.*, 2008 WL 941777, at *2 (W.D. La. April 7, 2008; *Bernal v. Vankar Enter., Inc.*, 2008 WL 791963, at *3 (W.D. Tex. March 24, 2008); *Hayes v. Laroy Thomas, Inc.*, 2006 WL 1004991, at *3 (E.D. Tex. April 18, 2006); *England v. New Century Finan. Corp.*, 370 F.Supp.2d 504 (M.D. La. 2005).

March 24, 2008). Furthermore, "this determination is made using a fairly lenient standard, and typically results in a 'conditional certification' of a representative class." *Mooney*, 54 F.3d at 1214.[6]

"Once conditional certification is granted, the case proceeds through discovery as a representative action." *Bernal*, 2008 WL 791963, at *3. Upon completion of discovery and after notice has issued, the defendant may, if appropriate, file a motion for decertification, which initiates the second stage of the *Lusardi* analysis. *Id.* In this second stage, the Court must re-examine the class and make another factual determination under a more stringent standard as to whether the putative class members are, in fact, similarly situated. *Id.* "If [the class is similarly situated], then the representative action may proceed; if not, then the class should be decertified, the opt-in plaintiffs dismissed [without prejudice], and the class representatives should be allowed to proceed on their individual claims." *Id.*; *Albanil*, 2008 WL 4937565, at *2.

---

[6]Although neither party has addressed the issue, the Court acknowledges that several district courts have applied a more stringent "similarly situated" inquiry where parties have had the opportunity to conduct discovery on the issue of certification. *Valcho*, 574 F.Supp.2d at 622; *Harris*, 2006 WL 1994586, at *3. These district courts have explained that if substantial discovery has occurred then the rationale for a lenient standard is inapplicable, and the Court may proceed to the second stage of the analysis and consider the relevant factors to determine whether plaintiffs are similarly situated. *Clary v. Southwest Airlines*, 2007 WL 4947690, at *3 (N.D. Tex. Dec. 17, 2007).

First and foremost, this issue is being raised *sua sponte*. In the present case, Defendant has *not* requested the Court to bypass the initial notice stage and scrutinize Plaintiff's motion under the stricter decertification analysis. Regardless, "While such requests have been granted at times, they are ordinarily only granted when discovery is largely complete and the matter is ready for trial." *Gandhi*, 2009 WL 1940144, at *4. Here, the parties did not, as parties often do in such cases, agree to a scheduling order which explicitly contemplated discovery being conducted before a motion for class certification would be filed. Rather, the discovery period is not scheduled to expire for another six weeks on December 11, 2009, and as such, discovery is not complete. *See*, Clerk's Docket #13. Furthermore, the case is not scheduled for trial until January of 2010, but a specific trial date has not been set yet. *Id.* Therefore, the matter is not ready for trial. Accordingly, the Court believes that it would be inappropriate to apply the stricter second-stage standard in this case. Nevertheless, the Court notes that Plaintiff has not just relied upon her pleadings but has submitted substantial evidence in support, and therefore, under either analysis, the result would be the same.

The present case is still in the first stage, *i.e.* the notice stage. In the notice stage, "[t]he plaintiff bears the burden of making the preliminary factual showing that a similarly situated group of potential plaintiffs exists." *Albanil v. Coast 2 Coast, Inc.*, 2008 WL 4937565, at 3 (S.D. Tex. Nov. 17, 2008)(citing *Badgett*, 2006 WL 2934265, at *2). "[T]he class member representatives must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan v. Staff Care, Inc.*, 497 F.Supp.2d 820, 824-825 (N.D. Tex. July 6, 2007). "However, the court 'need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated (citations omitted).' The remedial nature of the FLSA and §216 'militates strongly in favor of allowing cases to proceed collectively (citation omitted).'" *Id.* Therefore, "[t]he positions need not be identical but similar." *Yaklin v. W-H Energy Servs., Inc.*, 2008 WL 1989795, at *3 (S.D. Tex. May 2, 2008).

Accordingly, in deciding whether to conditionally certify the class and give notice, "Plaintiffs simply must make, through their pleadings, and any affidavits, 'substantial allegations that putative class members were together the victims of a single decision, policy or plan...'" *Albanil*, 2008 WL 4937565, at *6 (quoting *Mooney*, 54 F.3d at 1214). "Courts who have faced the question of whether movants have established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted." *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)(internal citations omitted). Ultimately, "[a] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy or practice." *Ryan*, 497 F.Supp.2d at 825 (quoting *Donohue v. Francis Servs., Inc.*, 2004 WL 1161366, at *1 (E.D. La. May 24, 2004).

7

### B.   CLASS MEMBERS ARE "SIMILARLY SITUATED"

Plaintiff has raised only two abbreviated objections to Plaintiff's request for conditional certification. First, in the present controversy, Defendant objects that, "all parties that are interested in being a part of this suit are already involved." *See*, Def. Reply at 2. However, contrary to Defendant's argument, the joinder of additional plaintiffs after the inception of the case is persuasive evidence that a putative class does exist. *See, Shaffner v. Cash Register Sales & Serv. of Houston*, 2006 WL 1007542, at *1 (S.D. Tex. Apr. 17, 2006).[7] In the present case, potential plaintiffs have been identified, and affidavits of potential plaintiffs have been submitted. Specifically, since the filing of the lawsuit, twelve current or former Alligator Grill employees have filed Notices of Consent to join a collective action. *See*, Clerks Docket #s 4 and 10.[8] Four of the current employees who have subsequently joined the present lawsuit have filed affidavits supporting all of Plaintiff's allegations. *See*, Pl. Mot. At Ex. 2-5. Therefore, the record affirmatively establishes that other servers and bartenders desire to opt in to the class.

Equally important, Defendant has subsequently acknowledged that it underpaid overtime wages and *may* have improperly charged employees for their uniforms for the approximate four-year time period alleged in the present lawsuit. *See*, Pl. Mot. at Ex. 6, p.3 and 12; Ex. 7, p. 42, lines 9-13;

---

[7] *See also, Kuperman v. ICF Intern.*, 2008 WL 4809167, at *6 (E.D. La. Nov. 3, 2008)("To Plaintiffs have opted in to this proposed collective action under §216(b) since the filing of the instant motion, and thus certification at this point is appropriate."); *Bernal*, 2008 WL 791963, at *4 ("several plaintiffs have already opted in . . . It is clear from the pleadings, the affidavits and the additional plaintiffs that conditional certification is appropriate.").

[8] On December 24, 2008, Adrian Victorian filed a notice of consent, thereby making the count of potential plaintiffs thirteen. *See*, Clerk's Docket #10. However, on April 22, 2009, the parties filed an agreed motion to dismiss Adrian Victorian without prejudice. *Id.* at # 18. The Court subsequently granted the motion to dismiss on April 23, 2009. *Id.* at #19.

Ex. 8, pp. 35-37; Ex. 9, p. 39, lines 20-25. As such, it is reasonable to presume that current and former employees would, if given notice, desire to seek compensation for the aforementioned underpayment of wages and allegedly improper charges. With these facts in mind, the Court is persuaded that a putative class does exist.

Furthermore, Plaintiff has presented evidence of a widespread plan to violate the FLSA. Specifically, with regard to Plaintiff's tip pool complaint, page 5 of the "Alligator Grill Team Member Manual" confirms that Defendant required a mandatory "Tip out" of "4% of total net sales." *See*, Pl. Mot. at Ex. 6, p.5. Additionally, Steven Wimberly, owner of Alligator Grill, and Paul Blanford, General Manager of Alligator Grill, both testified that the tip pool policy is mandatory for all bartenders and servers. *See*, Pl. Mot. at Ex. 7, p. 40, lines 12-20; Ex. 8, p. 47, lines 4-16. The Honorable Xavier Rodriguez has explained that, "Plaintiff's allegation that participation in the invalid tip pool was mandatory for all Defendants' bartenders is sufficient to meet the lenient standard for conditional certification." *Bernal*, 2008 WL 791963, at *4. As such, the allegations and evidence of mandatory participation in an invalid pool tip are more than sufficient to warrant conditional certification in the present case.

Additionally, with regards to plaintiff's overtime wages complaint, Mr. Wimberly and David Gebser, Bookkeeper for Alligator Grill, have both admitted that Defendant improperly underpaid Plaintiff's and other current and former employees' overtime wages. *See*, Pl. Mot. at Ex. 7, p. 42, lines 9-13; Ex. 9, p. 39, lines 20-25.[9] More specifically, Mr. Gebser acknowledged that the amount was "an error," and Mr. Wimberly acknowledged, "I think that we had made a mistake." *Id.* at Ex. 7, p. 42, lines 22-25; Ex. 9, p. 39, lines 20-25. The Court finds that Defendant's admissions are

---

[9]*Supra*, note 2.

sufficient to support conditional certification. However, the Court also notes that as a result of Defendant's "mistake," the Department of Labor (DOL) conducted an audit of Defendant's pay practices. *Id.* at Ex. 7, p. 43. "Other courts have relied on DOL reports or audits as a grounds for certifying a collective action under §216(b) based on the 'similarly situated' requirement." *Kuperman*, 2008 WL 4809167, at *7. Therefore, the parties should be permitted to proceed through discovery, and be permitted to present evidence of the DOL audit at the decertification stage, if appropriate.

Lastly, with regard to Plaintiff's third claim, the Team Member Manual further confirms that, "Uniform requirements" include "Alligator T-shirt and black/dark apron (Employees will purchase shirts at cost) . . . Shirts are currently $7.50 for employees." *See*, Pl. Mot. at Ex. 6, p.3 and 12.[10] Moreover, Mr. Blanford has admitted that Defendant formerly required its servers and bartenders to purchase a particular shirt and/or apron from Defendant for $7.50 per shirt or apron. Ex. 8, pp. 35-37. Therefore, for all of the above reasons, Plaintiff has made substantial allegations that putative class members were together the victims of a single decision, policy or plan that violated the FLSA.

Finally, Plaintiff has shown that the potential class members are similarly situated in terms of job requirements and similarly situated in terms of payment provisions. As illustrated in this Order, Plaintiff has, "amply demonstrated that Defendant's tip pool policy, overtime wage policy and uniform deduction policy applied to all waiters and bartenders." *See*, Pl. Reply at 2. Therefore, Plaintiff has shown that putative class members are similarly situated.[11]

---

[10] *Supra*, note 3.

[11] Of course, "Discovery may clarify the need to create subclasses or narrow the class." *Lopez v. Sam Kane Beef Processors, Inc.*, 2008 WL 565115, at *2 (S.D. Tex. Feb. 2, 2008). Of course, further discovery may also require decertification.

Defendant's only objection in this regard is that the employees are not similarly situated because, "a number of the plaintiffs and the potential class members received income from the allegedly invalid tip pool, and that fact alone is enough to sufficiently distinguish claims in this case and preclude the conditional certification of a class." *See*, Def. Resp. at 1-2. First, Plaintiff is correct that, "Defendant fails to cite us to a single case wherein a court has held that certification is improper under these *alleged* circumstances." *See*, Pl. Reply at 1; *See also*, L.R. CV-7(d)("If any party opposes a motion, the respondent shall file a response . . . The response shall contain . . . citations of the specific legal authorities upon which the party relies."). Moreover, "This merely raises fact issues to be decided later and does not preclude conditional certification as Defendants argue." *Bernal*, 2008 WL 791963, at *3. Defendant may properly raise this issue, with supporting evidence and legal authorities, either in a subsequent motion for decertification or in a motion for summary judgment.

In sum, Plaintiff is correct that "[t]he attached declarations, depositions, and documentary evidence well establish that the wage policies were mandatory, applied to all members of Alligator Grill's service staff, that other servers wish to 'opt in,' and that they are 'similarly situated' to [Plaintiff]." *See*, Pl. Mot. at 8. Accordingly, the Court will conditionally certify a class that will include all waiters, waitresses and bartenders who worked at a single location of the Alligator Grill, *i.e.* 3003 South Lamar, from October 28, 2005 to the present, and suffered from the three alleged FLSA violations.

**IT IS THEREFORE ORDERED** that Plaintiff's Opposed Motion for Conditional Certification and Notice to Potential Class Members (Doc. #31) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the above-entitled case is hereby *conditionally* certified as a collective action.

**IT IS FURTHER ORDERED** that Defendant shall provide Plaintiff's counsel with a list of names and last known addresses for all waiters, waitresses, and bartenders employed by 3003 South Lamar, LLP d/b/a Alligator Grill during the period of October 28, 2005 to the present in electronic format within fourteen (14) days of this Order's issuance. Plaintiffs' counsel shall then send the Notice to Class and Consent Form, attached as Exhibit 11 to Plaintiff's Opposed Motion for Conditional Certification and Notice to Potential Class Members (Doc. #31), to all potential class members.[12] Thereafter, the potential class members shall have sixty (60) days from the date that Plaintiff's counsel mails the notice and consent forms to join the above-entitled case by filing a Notice of Consent form with the Court.

SIGNED this 29th day of October 2009.

JAMES R. NOWLIN
UNITED STATES DISTRICT JUDGE

---

[12] The Court notes that in its Response to Plaintiff's Motion for Conditional Certification and Notice, Defendant did not raise any objections to the Notice and Consent Form attached as Exhibit 11 to Plaintiff's motion. After an independent review, the Court approves of the proposed form submitted as Exhibit 11.