IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JACQUELYN PEDIGO, on Behalf of Herself and Others Similarly Situated | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. A:08-cv-03JRN |
| | § § § | |
| 3003 SOUTH LAMAR, LLP d/b/a ALLIGATOR GRILL | § § § | |
| Defendant. | | |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. Summary**

In this Fair Labor Standards Act (FLSA) case, Jacquelyn Pedigo (Pedigo) represents a class of waiters (a/k/a servers) employed by 3003 South Lamar, LLP d/b/a Alligator Grill (Alligator Grill).[1] Alligator Grill violates the FLSA by paying its waiters and bartenders (collectively "servers") less than the minimum wage and by paying overtime based on sub-minimum wage rates. Alligator Grill cannot claim a tip credit against its minimum wage obligations because it does not inform servers of the FLSA's tip credit provisions and requires servers share their tips with kitchen employees. In addition, Alligator Grill charges its employees for uniforms. Because these material facts are not in dispute, Plaintiffs are entitled to summary judgment.[2]

---

[1] *See* Docket Entry #38 (conditionally certifying class). In addition to Pedigo, nineteen (19) class members have filed consent forms to join this case. The deadline for class members to 'opt in' is January 15, 2010.

[2] Pedigo and the nineteen (19) opt-in claimants are collectively referred to as "Plaintiffs."

1

## II. Summary Judgment Standard

Courts should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Broussard v. Parish of Orleans,* 318 F.3d 644, 650 (5th Cir.2003) (internal citations omitted). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Brown v. City of Houston*, 337 F.3d 539, 540-41 (5th Cir. 2003). A dispute about a material fact is "genuine" if there is enough evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Broussard*, 318 F.3d at 650. When deciding a motion for summary judgment, courts review all factual questions in the light most favorable to the nonmovant. *Id.*

## III. Status of Discovery

This suit was filed on October 29, 2008. The Parties have had adequate time for discovery and the Court's deadline for completion of discovery has expired. (*Docket Entry #13*) Plaintiffs have deposed Defendant's owner (Steven Wimberly), bookkeeper (David Gebser), and general manager (Paul Blandford). Defendant has deposed three (3) of the Plaintiffs. The Parties have exchanged documents. Other than the production of payroll records for those individuals who file(d) consents after 11/22/09, no additional discovery is contemplated nor has any additional discovery been requested by either party. Accordingly, Plaintiffs' motion for partial summary judgment is ripe for the Court's consideration.

## IV. Factual Background

Alligator Grill operates a Cajun-style restaurant in Austin, Texas. *Pedigo Decl., ¶ 2*.[3] Jacquelyn Pedigo (Pedigo) is a former server at Alligator Grill. *Id.* Joshua Roberts (Roberts), Jacqueline Knight (Knight), Angela Fotiades (Fotiades), and Tracy Barbarossa (Barbarossa) still work as servers at Alligator Grill. *Barbarossa Decl. ¶ 2, Roberts Decl. ¶ 2, Knight Decl., ¶ 2, and Fotiades Decl., ¶ 2.* Alligator Grill pays its servers a direct wage that is less than the statutory minimum wage, specifically $2.13 per hour. *Pedigo Decl., ¶ 3, Barbarossa Decl., ¶ 3, Roberts Decl., ¶ 3, Knight Decl. ¶ 3, and Fotiades Decl., ¶ 3.* In addition to their direct wage, Alligator Grill's servers earn tips from the restaurant customers. *Id.* However, Alligator Grill does not allow its servers to keep all of the tips they earn. *Id.* Rather, Alligator Grill requires its servers to contribute a portion of their tips equal to 4% of their total net sales to a tip pool. *Id.* The employees who share in the tip pool include the expediters (expos), hostesses, dishwashers, prep cooks, and non-service bar backs. *Pedigo Decl., ¶ 3, Barbarossa Decl., ¶ 11, Fotiades Decl., ¶ 4 and 6, Knight Decl. ¶ 3, and Roberts Decl., ¶ 3.*

Alligator Grill's Team Member Manual spells out the tip pool policy. (*Exhibit 6, p. 5*) Alligator Grill's tip pool policy is "mandatory." (*Exhibit 7* - the deposition of Steven Wimberly, p. 40, lines 12-20).[4] The tip pool policy applies to all servers, i.e. no one is exempt from this policy. (*Exhibit 8* – the deposition of Paul Blandford, p. 47, lines 8-16).[5]

---

[3] In support of this motion Pedigo submits, as Exhibits 1-5 respectively, the declarations of Jacquelyn Pedigo (hereinafter cited as *Pedigo Decl.*), Tracy Barbarossa (hereinafter cited as *Barbarossa Decl.*), Joshua Roberts (hereinafter cited as *Roberts Decl.*), Jacqueline Knight (hereinafter cited as *Knight Decl.*), and Angela Fotiades (hereinafter cited as *Fotiades Decl.*).

[4] Steven Wimberly is the owner of Alligator Grill. *(Exhibit 7, p. 5, lines 7-9)(*hereinafter *"Wimberly Depo"*)

[5] Paul Blandford is the General Manager of Alligator Grill. *(Exhibit 8, p. 5, lines 1-3)(*hereinafter *"Blandford Depo"*)

Similarly, Alligator Grill paid its servers a wage of $3.19 per hour for all "overtime hours."[6] (*Exhibit 9* – the deposition of David Gebser, p. 39, lines 20-25;[7] s*ee also, Pedigo Decl.* ¶ *7, Roberts Decl.* ¶ *7, Knight Decl.,* ¶ *7,* and *Barbarossa Decl.* ¶ *12*. However, Alligator Grill now concedes that it was required to pay its servers between $4.71 - $5.41 per hour for all overtime hours. *Wimberly Depo. p. 42, lines 9-20* and *Gebser Depo., p. 39, lines 20-25*.

Finally, Alligator Grill required its servers to purchase uniforms. *Pedigo Decl.* ¶ *8, Roberts Decl.* ¶ *8, Knight Decl.,* ¶ *8, Fotiades Decl.,* ¶ *7,* and *Barbarossa Decl.* ¶ *13*. Specifically, Alligator Grill charged its servers $7.50 per shirt and/or apron, thereby further reducing the servers' hourly wage below the statutory minimum. *Id.* This requirement is set forth in Alligator Grill's Team Member Manual (*Exhibit 6, p. 12); see also, Blandford Depo. p. 37, lines 2 - 20*.

## V. The FLSA's Requirements

From September 1, 1997 until July 23, 2007, the FLSA required employers to pay a minimum hourly wage of $5.15. From July 24, 2007 to July 24, 2008, the minimum wage was $5.85. From July 24, 2008 to July 24, 2009, the minimum wage was $6.55, and from July 24, 2009 to the present, the minimum wage has been $7.25. The FLSA also requires employers to pay overtime to each employee who works more than 40 hours in a week. 29 U.S.C. § 207(a). This overtime must be at a rate that is at least 1.5 times the employee's regular rate. *Id.* A tipped employee's regular rate includes both the direct wage and any tip credit taken by the employer. 29 C.F.R. § 531.60.

---

[6] Alligator Grill changed its 'overtime' pay policy in April 2009 after a Dept. of Labor audit concluded that it had paid its servers incorrectly. (*Wimberly Depo., pgs. 42 – 43*)

[7] David Gebser is the bookkeeper/accountant for Alligator Grill. (*Exhibit 9, pgs. 7 - 8)(*hereinafter *"Gebser Depo")*

## VI. Alligator Grill's Wage Violations

Alligator Grill's wage violations may be summarized as follows:

1. failing to pay the appropriate overtime wages to its servers;

2. improper deductions from its servers' wages to pay for uniforms; and

3. Alligator Grill is not entitled to claim a tip credit against its minimum wage obligations because: (a) it failed to notify its servers of the tip credit, and (b) it required its servers to share tips with kitchen employees, namely dishwashers and prep-cooks. Each violation is discussed separately below.

**A. Alligator Grill's Overtime Wage Violations**

The Fair Labor Standards Act (FLSA) permits employers to pay a reduced *minimum* wage to certain "tipped employees." 29 U.S.C. § 203(m). However, employers must still pay tipped employees *overtime* based on the full minimum wage. *See, e.g.,* 29 C.F.R. § 531.60; *Perez v. Palermo Seafood, Inc.*, 548 F.Supp.2d 1340, 1349 (S.D. Fla. 2008) *aff'd* 2008 WL 5207047 (11th Cir. Dec. 12, 2008), and 29 U.S.C. §207.

During the period relevant to this suit, the lowest minimum wage was $5.15 per hour. 29 U.S.C. § 206 (2006). The maximum tip credit at that time was $3.02 per hour. 29 U.S.C. § 203(m) (2006). Therefore, the required overtime rate (for overtime hours worked prior to 7/24/07) is calculated as follows:

| | | |
|---|---|---|
| Applicable Minimum Wage | = | $5.15 |
| Multiply $5.15 by Time and a Half | = | $7.73 |
| Subtract the Maximum Tip Credit of $3.02 | = | $4.71 |

*See, Exhibit 10 at p. 2,* National Restaurant Association, *How to Calculate Overtime for Tipped Employees* (June 4, 2001), available at http://www.restaurant.org/legal/law_ot.cfm.[8]

Regardless of the validity of its tip pool (more fully discussed below), the FLSA required Alligator Grill to pay at least $4.71 for each hour of overtime for those hours worked in excess of forty (40) prior to July 24, 2007. *Id.*; *see also,* 29 U.S.C. §§ 203(m) & 207(a)(2006); 29 C.F.R. § 531.60; *Perez*, 548 F.Supp.2d at 1349. Using the same math, Alligator Grill was required to pay its servers an overtime rate of $5.06 per hour during the period of 7/24/07 – 7/24/08, and an overtime rate of $5.41 for each hour of overtime during the period of 7/24/08 – 7/24/09.[9]

Despite the clear mandate of the FLSA's overtime provisions, Alligator Grill only paid its servers $3.19 for overtime hours. *Wimberly Depo.*, p. 33, line 25 – p. 34, line 9. *See also Gebser Depo.*, p. 39, line 20 – p. 40, line 8, *Pedigo Decl.*¶ 7, *Barbarossa Dec.* ¶ 12, *Roberts Decl.* ¶ 7, and *Knight Decl.* ¶ 7. Accordingly, Plaintiffs are entitled to summary judgment on this issue.

**B.    Alligator Grill's Minimum Wage Violations**

**1.    Uniform Deductions.**

"Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.2d 220, 230 (S.D. N.Y. 2002). "Any arrangement whereby a tipped employee agrees that part of his or her tips become the property of the employer is inconsistent" with the FLSA's tip credit provisions. *See* DOL Wage & Hour Opinion Letter, 2006 WL 1910966 (June 9, 2006). Moreover, "[t]he FLSA does not permit an

---

[8]    From 7/24/07 - 7/24/08, the correct hourly overtime rate for servers was $5.06. From 7/24/08 – 7/24/09, the correct hourly overtime rate for servers was $5.41. From 7/24/09 to the present, the correct hourly overtime rate for servers has been $5.76.

[9]    Per Alligator Grill's owner, Steven Wimberly, the restaurant started paying its servers the correct overtime rate after this lawsuit was filed. *Wimberly Depo. p. 42, line 21 – p. 43, line 2.*

employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise." *Reich v. Priba Corp.*, 890 F.Supp. 586, 596 (N.D. Tex. 1995)(*citing* 29 C.F.R. § 531.3(d)(2) & 29 C.F.R. § 531.32(c)). "The FLSA does not allow uniforms, or other items which are considered to be primarily for the benefit or convenience of the employer, to be included as wages." *See Fact Sheet #16: Deductions From Wages for Uniforms and Other Facilities Under the Fair Labor Standards Act (FLSA)*, U.S. Department of Labor Wage and Hour Division, Rev. July 2009, attached hereto as Exhibit 11.

Nevertheless, Alligator Grill required Plaintiffs to pay for their uniforms. *See* Exhibit 6, Alligator Grill Team Manual, p. 6 ("Employees will purchase shirts at cost, servers by Day 3 of training.") and p. 12 ("Shirts are currently $7.50 for employees…Aprons are also $7.50.") *See also Pedigo Decl. ¶ 8, Barbarossa Dec. ¶ 13, Roberts Decl. ¶ 8, Knight Decl. ¶ 8, Fotiades ¶7, and Blandford Depo. p. 36, line 23 – p. 37, line 20*. Even if Alligator Grill's tip pool was valid (and it was not), Plaintiffs were paid at the minimum wage. Therefore, even if the sum paid to Plaintiffs in tips and direct wages equaled or exceeded the applicable minimum wage, the improper deductions for uniforms necessarily resulted in the payment of an hourly wage below the statutory minimum wage. *Bernal v. Vankar Enterpirses, Inc.*, 579 F. Supp. 2d 804, 807 (W.D. Tex. 2008) (collecting cases). Therefore, Plaintiffs are entitled to summary judgment on this issue.

**2.    The Tip Credit.**

Alligator Grill paid its servers $2.13 per hour. *Pedigo Decl. ¶3, Barbarossa Dec. ¶3, Roberts Decl. ¶3,Knight Decl. ¶3, and Fotiades ¶3*. While Alligator Grill originally denied taking advantage of the "tip credit" (*Docket Entry #9 p. 2, ¶ 1*), Alligator Grill now claims to rely on the tips received by servers to make up the difference between $2.13 and the applicable

minimum wage. (*Docket Entry #14 ¶ 8*). While the FLSA does permit a tip credit provided certain conditions are met, Alligator Grill cannot establish the necessary elements of this affirmative defense. Thus, Alligator Grill owes Plaintiffs the difference between the wage actually paid (i.e. $2.13 per hour) and the full statutory minimum wage for each hour worked, i.e. the tip credit.

### a. Alligator Grill Cannot Claim a Tip Credit.

Alligator Grill bears the burden of proving its entitlement to a tip credit. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979); *Reich v. Priba Corp.*, 890 F.Supp. 586, 595-96 (N.D. Tex. 1995); *Chisolm v. Gravitas Restaurant, Ltd.*, 2008 WL 838760, at *3 (S.D. Tex. March 25, 2008). The requirements are strictly construed. *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334, at *1 (S.D.Tex. Nov. 3 2006) (*citing Chung v. New Silver Palace Rest., Inc.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. 2002)). "Unless the employer satisfies its burden of showing the applicability of the tip credit, the employees are 'entitled to the full minimum wage for every hour worked.'" *Smith v. Noso, Inc.*, 2007 WL 2254531, at *4 (M.D. Fla. Aug. 3, 2007)(*citing Barcellona*, 597 F.2d at 467).

In order to claim a tip credit, an employer must first inform his employees of the FLSA's tip credit provisions. 29 U.S.C. § 203(m)(2); *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1988)("[A]n employer must inform the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation."). In addition, the tipped employees must be permitted to retain all their tips – either individually or through a valid tip pool. *Id.*; *see also, Priba Corp.*, 890 F.Supp. at 595-96. Failing either of these tests precludes application of the tip credit. *Id.*

8

### 1. *Alligator Grill Failed to Inform Plaintiffs of the Tip Credit Provisions.*

Alligator Grill's owner, Steven Wimberly does not tell servers how they will be paid. *Wimberly Depo.*, p. 30, lines 6-16. Nor does Alligator Grill's bookkeeper, David Gebser. *Gebser Depo. p. 18, lines 19-25.* In fact, no one informs servers of the tip credit provisions of the FLSA. *Pedigo Decl* ¶ *3, Barbarossa Decl.* ¶ *3, Roberts Decl.* ¶ *3, Knight Decl.* ¶ *3,* and *Fotiades Decl.* ¶*3.* This is consistent with Alligator Grill's representation to the Court that it did not rely on the tip credit at all (*Docket Entry #9 p. 2, ¶ 1*).

Moreover, the mere fact that the servers' paychecks reflect that Alligator Grill paid the servers a direct wage of $2.13 per hour plus tips is insufficient to satisfy its obligation to inform its employees of its intention to treat tips as satisfying part of its minimum wage obligation. *Bernal v. Vankar Enterpirses, Inc.*, 579 F. Supp. 2d. 804, 808 (W.D. Tex. Sept. 30, 2008); s*ee also*, *Martin v. Tango*, 969 F.2d 1319, 1322 (1st Cir. 1992) ("We read section 3(m) to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations. It could easily be read to require more-for example, notice of 'the amount ... determined by the employer' to constitute wages-but how much more need not be decided in this case.").

Because Alligator Grill failed to inform Plaintiffs of the FLSA's tip credit provisions, it cannot claim a tip credit against its minimum wage obligations. *See,* 29 U.S.C. § 203(m); *Barcellona*, 597 F.2d at 467-78; *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). Therefore, Plaintiffs are entitled to summary judgment on this issue.

### 2. *Plaintiffs Were Not Permitted to Retain All Their Tips.*

If the tipped employees are required to share their tips with any employee who does not "customarily and regularly receive tips," the employer cannot claim any tip credit. *See, e.g.,*

*Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550-51 (6th Cir. 1999) ("Because the salad preparers abstained from any direct intercourse with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or kitchen support work, they could not be validly categorized as 'tipped employees' under section 203(m). Accordingly, during the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal."); s*ee also*, *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *14 (S.D.N.Y. March 30, 2006); *Ayers v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 308-09 (S.D.N.Y. 1998); and *Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98 (E.D. Tenn. 1979). "Where management employees participate in a tip pool, the pool is invalid." *See Morgan v. SpeakEasy, LLC*, 2007 WL 2757170, at *17 (N.D. Ill. Sept. 20, 2007). Similarly, kitchen workers are not permitted to participate in a tip pool. *See, e.g., Kilgore v. Outback Steakhouse of Fla., Inc.,* 160 F.3d 294, 301 (6th Cir.1998); *Letter from Dep't of Labor, Wage and Hour Div.* (Nov. 4, 1997), 1997 WL 998047 ("[T]he FLSA requirement that tipped employees retain all tips does not preclude a valid tip-pooling arrangement among employees who customarily and regularly receive tips.... [W]aiters, bellhops, waitresses, countermen, busboys, and service bartenders are among those who may participate in a tip pool.... [A]n employer will lose the benefit of the exception from the tip-retention requirement if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips, such as janitors, **dishwashers**, **chefs**, or laundry room attendants."); *see also*, *Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act* (Exhibit 12*)* ("Tipped employees may not be required to share their tips with employees who have not customarily and regularly participated in tip pooling arrangements, such as **dishwashers**, **cooks**, **chefs**, and janitors.")(emphasis added).

Alligator Grill's Team Member Manual provides that "[T]ips are the property of the Team Members." *See* Exhibit 6, p. 5. "Every employee is a member of the team." *Id*. at p. 6. This includes "anybody that works at Alligator Grill," including dishwashers. *Blandford Depo. p. 34, line 22 – p. 35, line 1.*

The only employees at Alligator Grill who receive tips from the customers (i.e. "directly tipped employees") are the waiters and bartenders. *Blandford Depo. 46, lines 1-6.* The waiters and bartenders are required to contribute 4% of their total net sales every shift towards a tip pool from which other restaurant employees share (i.e. the "indirectly tipped employees"). *Blandford Depo. p. 47, lines 8-16*. Unlike the "directly tipped employees" who take their tips home with them at the end of every shift, the "indirectly tipped employees" receive their share of the servers' tips on a paycheck every two weeks. *Blandford Depo. p. 55, lines 12-22*. The "indirectly tipped employees" also receive a separate paycheck which consists of their hourly wage multiplied times the number of hours worked during the pay period. *Id*.

Alligator Grill's training manual does not advise the servers who they will be required to share tips with pursuant to the restaurant's tip pool policy, nor does Alligator Grill publish a written document that identifies the tip pool recipients. *Blandford Depo. p. 57, lines 3-11*. However, the categories of restaurant employees who receive a share of the tip pool monies has not changed in the last four or five years, and remains the same today. *Blandford Depo. p. 57, lines 22-25 and p. 89, lines 7-9*.

The "indirectly tipped employees" include the following restaurant workers: expediters (expos), hostesses, dishwashers, prep cooks, and non-service bar backs. *Pedigo Decl., ¶ 3, Barbarossa Decl., ¶ 11, Fotiades Decl., ¶ 4 and 6, Knight Decl. ¶ 3, Roberts Decl., ¶ 3, Clontz*

11

*Decl. ¶ 4, and Terry Decl. ¶ 6.*[10] Because the dishwashers, prep cooks, and non-service bar backs do not customarily and regularly receive tips, Alligator Grill cannot claim a tip credit against its minimum wage obligation to the servers. *Ayers,* 12 F.Supp.2d at 308-09.

### 3. *Dishwashers and prep-cooks*

Alligator Grill's general manager, Paul Blandford, confirms that a portion of the servers' tips are distributed to hostesses, expediters, and non-service bar backs. *Blandford Depo. p. 58, lines 1-9.* However, Mr. Blandford also concedes that dishwashers and prep-cooks receive a share of the tip pool monies as demonstrated below.

The primary job function of a dishwasher at Alligator Grill is to wash dishes. *Blandford Depo. p. 61, line 21-23; see also Terry Decl. ¶ 3.* The cooks' primary responsibility is to prepare the food for the customers. *Blandford Depo. p. 68, lines 10-13.* In addition, dishwashers, cooks, and prep-cooks arrive before the restaurant opens in order to shuck oysters, pull the chairs off the tables, get the bathrooms looking nice, etc. – all before a single customer walks into the restaurant. *Blandford Depo. p. 60, line 24 – p. 61, line 14.* Dishwashers and prep-cooks are considered "back of the house" employees at Alligator Grill. *Blandford Depo. p. 75, lines 5-9; see also Gebser Depo. p. 23, lines 8-9.*

Oscar Grajeda, Alejandro Ramirez-Gomez, Edverando Acabal, and Obdulio de Jesus are just a few of the individuals who work as dishwashers. *Blandford Depo. p. 66, lines 6-19; see also Barbarossa Decl. ¶ 7, 8 and 10.* Frank Kinkaid was also a dishwasher until approximately July 2009. *Gebser Depo. p. 33, lines 2 – 15; see also Blandford Depo. p. 76, lines 14-21* and *Barbarossa Decl. ¶ 7and 8.*

---

[10]     In support of this motion, Plaintiffs submit the declarations of Christopher Clontz (*Clontz Decl.*)(Exhibit 13) and Ian Terry (*Terry Decl.*)(Exhibit 14) - two current employees of Alligator Grill who have worked there as dishwashers, expediters, non-service bar backs,and/or waiters.

Angelica Angeles is the prep-cook. *Blandford Depo. p. 72, lines 7-18*. Lazaro Flores Reyes previously worked as a prep-cook. *Blandford Depo. p. 72, lines 19 – 25*; *see also Gebser Depo. p. 24, lines 13-16*.

### 4. *Tips are shared with dishwashers and prep-cooks.*

Prep-cook Angelica Angeles is guaranteed an hourly wage of $8.50. Of that amount, Alligator Grill pays Ms. Angeles direct wage of $4.65 per hour, and $3.85 per hour from the tip pool monies. *Blandford Depo. p. 82, line 16 – p. 83, line 6; see also* Exhibit 15 (Bates Stamped D0344, D0365, and D0385), Similarly, prep-cook Lazaro Flores Reyes was guaranteed an hourly wage of $7.00, $3.95 of which was paid from the servers' tip pool. *Id*. at Bates Stamped page D0365 and D0385.

Dishwasher, Alejandro Ramirez-Gomez, receives part of the servers' tip pool. *Id*. at Bates Stamped page D0344, D0365, D0385, and D1177. Similarly, Oscar Grajeda (employee number 553) shares in the servers' tips. *Id*. at Bates Stamped page D1177.

These records conclusively establish that dishwashers and prep-cooks received a share of the servers' tips in violation of the FLSA. *Myers*, 192 F.3d at 548-49. Therefore, Plaintiffs have disproved an essential element of Alligator Grill's affirmative defense, thus entitling Plaintiffs to partial summary judgment on this issue.

### 5. *Dishwashers and prep-cooks are not bus boys.*

Alligator Grill does not employ bus boys. *Blandford Depo. p. 62, lines 6-21; see also Pedigo Decl. ¶ 6,* and *Barbarossa Decl. ¶ 2 and 9*. Rather, traditional 'busser' duties are the responsibility of the waiters. *Id*.; *see also Blandford Depo. p. 69, lines 16-24*; *Pedigo Decl., ¶ 6, Barbarossa Decl., ¶ 2, 5, 7, 8, and 9; Fotiades Decl., ¶ 5 and 6, Knight Decl. ¶ 5 and 6; Roberts Decl., ¶ 5 and 6;* and *Clontz Decl. ¶ 3*.

Despite the foregoing, Defendant attempts to qualify the dishwashers and prep-cooks as appropriate recipients of the tip pool monies by claiming that these positions "assist" or "help" the waiters. Specifically, Defendant claims that in addition to their primary responsibility of washing dishes, the dishwashers also shuck oysters, prepare the shrimp, and, on "very rare occasions," go out into the dining room to remove dirty dishes from the tables. *Blandford Depo., p.92, line 23 – p. 93, line 14*. Similarly, the prep-cook comes to the restaurant before it opens, sets up the food items that will be utilized by the cooks, assists the cooks in preparing the food for the customers, helps the dishwasher, and "helps the servers in the morning" by getting "the oysters and the shrimp out" and on occasion fill up the ice and cut the garnishes for the servers to put on the customers' plates. *Blandford Depo. p. 73, line 8 – p. 74, line 8*. The prep cooks work in the kitchen. *Id*.

In short, dishwashers and prep-cooks are kitchen workers, do not "customarily receive tips" from restaurant patrons, and have little, if any, direct customer interaction. *Pedigo Decl. ¶5 and 6, Barbarossa Decl. ¶2, 5, 7, 8, and 9; Roberts Decl. ¶; Knight Decl. ¶ 5, Fotiades Decl. ¶ 5 and 6; Clontz Decl. ¶ 2 and 3; and Terry Decl. ¶ 3 and 4.* As such, dishwashers and prep-cooks are not permitted to receive a distribution from the servers' tip pool. *Letter from Dep't of Labor, Wage and Hour Div.* (Nov. 4, 1997), 1997 WL 998047 ("Furthermore, where a tipped employee, as a condition of his or her employment, is required to share tips with other employees (e.g., dishwashers) who do not meet the definition of a tipped employee, the tip pool is invalid. Therefore, it is our opinion that your client's tip-sharing proposal likely would not meet the requirements of the FLSA, and that the continued use of such an arrangement would defeat your client's right to claim a tip credit for its waiters/waitresses."). Therefore, Alligator Grill's tip

14

pool policy violates the minimum wage provisions of the FLSA entitling Plaintiffs to summary judgment on this issue.

**VII. The Portion of Plaintiffs' damages which
are readily calculable should be awarded at this time.**

Alligator Grill has produced time and payroll records for 13 of the 20 Plaintiffs.[11] Using these records, it is possible to calculate the wages owed to these Plaintiffs. For example, the minimum wage damages owed for each hour reflected in the records can be calculated by subtracting the $2.13 in wages paid from the full statutory minimum wage. Similarly, the overtime premium owed for each hour worked in excess of forty in a work week can be calculated by using the methodology discussed in Section VI (A), above.

The unpaid wages apparent on the face of Alligator Grills' records are summarized in Exhibit 16. Although the state of Alligator Grills' records precludes Plaintiffs' from seeking summary judgment for all of the claimants' damages, the damages reflected in Alligator Grills' records are not subject to reasonable dispute. Therefore, summary judgment should be granted with respect to these damages.

Similarly, the FLSA provides that an employer who violates its minimum and/or overtime wage provisions be liable for the full amount of the minimum and/or overtime wage, plus an additional amount as liquidated damages and attorneys' fees. *Singer v. City of Waco*, 324 F.3d 813, 822 (5th Cir. 2003); *Chisolm v. Gravitas Restaurant, Ltd.*, 2008 WL 838760 at *5 (S.D. Tex., March 25, 2008); 29 U.S.C. § 216(b). The Court can decline to impose liquidated damages, or reduce the amount, if it concludes that the employer acted in "good faith" and had "reasonable grounds" to believe that its actions complied with the FLSA. *Id.*, *see also Gravitas*,

---

[11] Alligator Grill has produced payroll records for all of the Plaintiffs who joined this case prior to 11/22/09 and has agreed to furnish Plaintiffs' counsel with the remaining claimants' records in the near future.

at *5, citing 29. U.S.C. § 260. An employer faces a "substantial burden" of demonstrating good faith and reasonable belief that its actions did not violate the FLSA. *Id.*, citing *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)(quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990)).

Here, the facts are undisputed that Alligator Grill made no effort to determine how much it was supposed to pay its servers for overtime wages before this suit was filed. *Gebser Depo. p. 40, lines 1-14*. In fact, not until after this lawsuit was filed did the owner, Steven Wimberly, become "familiar" with the term "FLSA." *Wimberly Depo. p. 26, lines 21 -25*. Mr. Wimberly did not "pull out the Fair Labor Standards Act" to see whether Alligator Grill's tip pool policy was legal, nor did he "consult with any attorneys" or "contact the Department of Labor" for their input on the propriety of Alligator Grill's pay practices. *Wimberly Depo. p. 41, lines 7-14*. Such conduct can in no way may be considered "good faith," nor does it not constitute "reasonable grounds" to believe that its conduct did not violate the FLSA. Accordingly, in addition to back wages, Plaintiffs are entitled to liquidated damages in an amount equal to the amount of back wages owed.[12]

## VIII. Conclusion.

Alligator Grill knew about the minimum wage and overtime requirements of the FLSA but failed to abide by them. Because many of Alligator Grill's violations are beyond cavil, partial summary judgment is appropriate.

---

[12] In addition to back wages and liquidated damages, Plaintiffs' are entitled to the recovery of attorneys' fees and costs. However, Plaintiffs will submit a separate application for fees and costs in the event this motion is granted in whole or in part, as the Court deems appropriate.

Respectfully submitted,

**DEBES LAW FIRM**

By: */s/ Robert R. Debes, Jr.*_____
Robert R. Debes, Jr.
Texas State Bar No. 05626150
Federal I.D. 12308
17 South Briar Hollow Lane, Suite 302
Houston, Texas 77027
Telephone: (713) 623-0900
Telecopier: (713) 623-0951
bdebes@debeslaw.com

**COUNSEL FOR PLAINTIFF**

**OF COUNSEL:**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch
Texas State Bar No. 24001807
1415 Louisiana Street, Suite 2125
Houston, Texas 77002
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this pleading was served by ECF notification in compliance with the Federal Rules of Civil Procedure on this 18th day of December 2009 as follows:

Stephen M. Orr
Orr & Olavson
804 Rio Grande
Austin, Texas 78701

/s/ Robert R. Debes, Jr.

ROBERT R. DEBES, JR.