IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2010 JUN 17  PM 2: 18

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                DEPUTY

| | | |
|---|---|---|
| JACQUELYN PEDIGO, on Behalf of Herself and Others Similarly Situated, Plaintiffs, | § § § § | |
| v. | § § | CAUSE NO.  A-08-CA-803-JRN |
| AUSTIN RUMBA, INC. d/b/a ALLIGATOR GRILL, Defendant. | § § § § | |

## ORDER

Before the Court in the above-entitled and styled cause of action are Plaintiffs' Motion for Partial Summary Judgment (Doc. #47), filed December 18, 2009; Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Doc. #49), filed December 29, 2009; Plaintiffs' Reply In Support of Motion for Partial Summary Judgment (Doc. #50), filed January 2, 2010; Defendant's Sur-Reply (Doc. #52), filed January 7, 2010; Plaintiffs' Response to Defendant's Sur-Reply (Doc. #56), filed January 19, 2010; and Defendant's Response to the Court's Order of May 28, 2010 (Doc. #63), filed June 3, 2010. After a labored review of the parties' arguments, the applicable law and the evidence, the Court is of the opinion that the Motion must be **GRANTED IN PART AND DENIED IN PART.**

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant 3003 South Lamar, LLP (hereinafter "Defendant") operates a Cajun-style restaurant in Austin, Texas, which is doing business as Alligator Grill. Plaintiff and class representative Jacquelyn Pedigo (hereinafter "Plaintiff Pedigo") was formerly a waitress and a bartender at Alligator Grill. On October 29, 2008, Plaintiff Pedigo filed the present lawsuit alleging Defendant violated the minimum wage and overtime provisions of the Fair Labor Standards Act of

1938 (FLSA). *See* Clerk's Docket #s 1, 8, 11 and 21. On October 30, 2010, the Court, pursuant to 29 U.S.C. §216(b), conditionally certified a class of "waiters, waitresses, and bartenders employed by 3003 South Lamar, LLP d/b/a Alligator Grill during the period of October 28, 2005 to the present." *See* Clerk's Docket #38. As such, Plaintiff Pedigo currently represents a class of twenty-two opt-in claimants[1] (collectively "Plaintiffs") in the present class action lawsuit. *Id.* To date, Defendant has not sought to decertify the class.[2]

In the present motion, Plaintiffs seek summary judgment on their claims that: (1) Defendant failed to pay the appropriate overtime wages to its servers; (2) Defendant improperly deducted fees from its servers' wages to pay for uniforms; and (3) Defendant failed to pay the required minimum wages. *See* Pl. Mot. at 5. In support of this third claim, Plaintiffs assert that Defendant improperly claimed a tip credit against its minimum wage obligations because: (a) Defendant failed to notify its

---

[1] Employees who wish to participate in a §216(b) collective action must affirmatively "opt in" by filing with the court a written consent to become a party. *See* 29 U.S.C. §216(b). In the present case, the following individuals have joined the collective action as opt-in claimants: (1) Jared Terrell; (2) Seth Emerick; (3) Takeru Garcia; (4) Joshua Roberts; (5) Jason Wiest; (6) Kasey Herber; (7) Jacqueline Knight; (8) Matthew Johns; (9) Tracy Barbarossa; (10) Angela Fotiades; (11) Holly Ruggiere; (12) Lauren Rhea Harrison; (13) Lacy Moody; (14) Ben Snitker; (15) Charity Rice; (16) Lucy Skiles; (17) Sonja Perks; (18) Heather Ray; (19) Rachel Walker; (20) Julie Nahrgang; (21) Cory Vansteenkiste; (22) Anja Robbins. *See* Clerk's Docket #s 4; 10; 18; 19; 40-46; 48; 51; 53; 54; 57; 58.

[2] Like other courts that have addressed the issue, this Court utilized the *Lusardi* test to determine whether to certify a class under section 216(b). As explained in the Court's prior Order, under the *Lusardi* test, a district court approaches the question of whether the potential plaintiffs are "*similarly situated*" through an *ad hoc* two-stage analysis. *Mooney*, 54 F.3d at 1213. The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Morales*, 2009 WL 2524601, at *2 (citing *Badgett v. Tex. Taco Cabana, L.P.*, 2006 WL 2934265, at *1 (S.D. Tex. Oct. 12, 2006)). In the first stage, the Court must make an initial determination whether notice of the action should be sent to potential [opt-in] class members."*Bernal v. Vankar Enter., Inc.*, 2008 WL 791963, at *3 (W.D. Tex. March 24, 2008). "Once conditional certification is granted, the case proceeds through discovery as a representative action." *Bernal*, 2008 WL 791963, at *3. Upon completion of discovery and after notice has issued, the defendant may, if appropriate, file a motion for decertification, which initiates the second stage of the *Lusardi* analysis. *Id.*

In the present case, discovery closed over six months ago on December 11, 2009. *See* Clerk's Docket #13 at ¶6. Defendant, however, never sought to decertify the class.

servers of the tip credit, and (b) Defendant impermissibly required its servers to share tips with dishwashers and preparation cooks. *Id.* In its Response, Defendant concedes that "it was not in compliance with the FLSA standards regarding the appropriate overtime rate and the charging of employees for uniforms," but Defendant disputes the damages requested for these violations. *See* Def. Resp. at 1. Defendant also contends that there are material facts in dispute regarding whether Defendant improperly claimed a tip credit against its minimum wage obligations.

## II.      STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(c). A fact is "material" if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Therefore, summary judgment is proper if, under governing law, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. *Id.* at 250.

The Court must view the evidence presented on the motion in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. As interpreted by the Supreme Court, this standard mandates the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

## III.   DISCUSSION

### A.   STATUS OF DISCOVERY

As an initial matter, Defendant objects that Plaintiffs' Motion is premature because the opt-in period of the conditionally certified class was open until January 15, 2010, and discovery is still ongoing. *See* Def. Resp. at 2; Def. Sur-Reply at 2. Contrary to this objection, the plain language of Rule 56 permits "a party may move for summary judgment at any time until 30 days after the close of discovery." *See* Fed. R. Civ. P. 56(c)(1)(A). "The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action. . . . The rule does set a presumptive deadline at 30 days after the close of all discovery." *See* Advisory Committee Notes to the 2009 Amendments to Rule 56. The time prescribed in Rule 56 applies "unless  different time is set by local rule or the court orders otherwise." *See* Fed. R. Civ. P. 56(c)(1).

In the present case, discovery closed over six  months ago on December 11, 2009, and Plaintiffs are correct that Defendant does not identify any additional discovery that is needed in order to properly and fully respond to Plaintiffs' Motion for Summary Judgment. *See* Clerk's Docket #13 at ¶6. Therefore, Plaintiffs properly filed the present motion under the relevant time limits set forth in Rule 56. Furthermore, under the Scheduling Order entered in the above-entitled case, the Court ordered, per the joint request of the parties, that all dispositive motions must be filed on or before December 18, 2009. *See* Clerk's Docket #13 at ¶7. The present motion was timely filed on December 18, 2009, the last day possible for filing such a motion. Accordingly, the Motion is ripe for the Court's consideration under the general mandate of Rule 56 and this Court's case-specific Scheduling Order. For these reasons, the Court will proceed to rule upon the merits.

### B.   OVERTIME WAGES

Turning to Plaintiffs' first claim, section 207 of the FLSA mandates that for each hour an employee works in excess of 40 hours in a given week, the employer must pay an overtime wage that is at least one and one-half times the employee's regular hourly rate. *See* 29 U.S.C. § 207(a). As indicated, "Defendant concedes that it did not pay [the required] overtime wages to its servers." *See* Def. Resp. at 2. Defendant, however, contends that "there should be no finding of any damages for any of the claimants on this issue, as Defendant has already paid the back wages and deductions to all parties who would accept the checks, and the moneys for all other parties, including any of the claimants in this suit who refused payment, are currently being held in trust by the Department of Labor." *See* Def. Resp. at 1. Essentially, Defendant insists that Plaintiffs either do not have any rights to seek damages or that Plaintiffs have waived their rights to seek damages in the present case.

Defendant has presented evidence that it has already paid "the backwages and deductions" it owes to Plaintiffs into trust with the Department of Labor (hereinafter "DOL"). Nevertheless, Plaintiffs are not required to accept such backwages and deductions as compensation for Defendant's violation(s) of the FLSA overtime wage provisions. Section 216 of the FLSA provides that "employers who violate [section 207] are subject to suit by aggrieved employees who may recover the unpaid wages, liquidated damages equal in amount to those damages, and reasonable attorney's fees." *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 538-539 (5th Cir. 1977)(citing 29 U.S.C. §216(b)).[3] The FLSA does provide "for a waiver of an additional recovery when settlement payments

---

[3] The employee's right to seek these damages in a federal court of competent jurisdiction only terminates "upon the filing of a complaint by the Secretary of Labor in an action under section 217." *See* 29 U.S.C. §216(c). In the present case, the Secretary of Labor has not filed a complaint under section 217, and therefore, Plaintiffs' rights to seek damages in this Court have not terminated.

have been supervised by the Secretary of Labor." *Alvarez v. 9ER's Grill @ Blackhawk, LLC*, No. H-08-2905, 2009 WL 2252243, at *7 (S.D. Tex. July 28, 2009) (citing 29 U.S.C. § 216(c)). However, in order to constitute a valid waiver of any right an employee may have to seek unpaid wages, liquidated damages and reasonable attorney's fees, section 216(c) plainly requires: (1) the employer to tender "payment in full;" and (2) the employee to agree "to accept such payment." *See* 29 U.S.C. §216(c); *See also Sneed*, 545 F.2d at 539 (citing 29 U.S.C. §216(c)).

In the present case, Defendant has tendered "payment in full" to the Department of Labor, thereby satisfying the first requirement under section 216(c). Plaintiffs, however, have not agreed to accept such payment as required in order to constitute a valid waiver. By Defendant's own admission, "Plaintiffs' attorney specifically requested that no payment be made to any of the claimants . . ." *See* Def. Resp. at 1. Accordingly, Plaintiffs' claims remain unsettled, and for this reason, Plaintiffs have not waived their rights to seek  unpaid wages, liquidated damages and reasonable attorney's fees in the present case.

Defendant's argument that Plaintiffs have not "provided any evidence that all members of the class rejected the proposed settlement accepted by the Department of Labor"[4] improperly attempts to shift the burden onto Plaintiffs. *See* Fed. R. Civ. P. 8(c)(listing waiver as an affirmative defense). Plaintiffs were not required to produce evidence that they did not waive their rights under section 216(b) because "[w]aiver . . . is an affirmative defense that must be raised by the defendant." *Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 572 n. 8 (5th Cir. 2001)(citing Fed. R. Civ. P. 8(c)); *Intrastate Gas Gathering Co. v. Dow Chem. Co.*, No. 99-20603, 2001 WL 85920, at *2 (5th Cir. Jan. 26, 2001)("Waiver is an affirmative defense and can be asserted against 'a party who

---

[4] *See* Def. Sur-Reply at 2.

intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right.'").[5] Defendant has not even pleaded, much less provided evidence to support, the affirmative defense of waiver. *See* Def. Answer to Pl. Third Am. Compl. (Doc. #23) at p. 5 (waiver not listed in "Affirmative Defenses" section). Therefore, Defendant's objection must be overruled.

For all of the foregoing reasons, Plaintiffs are entitled to summary judgment on their first claim under the FLSA.

### C.    UNIFORM CHARGES

With regard to Plaintiffs' second claim, Defendant also "concedes that it took improper uniform deductions from the paychecks of its servers," which effectively reduced servers' and bartenders' wages below the minimum wage required under section 206 of the FLSA. Despite this admission to liability, Defendant reiterates the exact same arguments and objections to the entry of summary judgment on Plaintiffs' uniform charges claim as it did to Plaintiffs' claim for failure to pay overtime wages. *See* Def. Resp. at 3-4; Def. Sur-Reply at 3. Defendant's verbatim objections are overruled for the same reasons stated above. *Supra* subpart III.B. Thus, Plaintiffs are also entitled to summary judgment on their second claim under the FLSA.

### D.    MINIMUM WAGE AND THE SECTION 203(m) TIP CREDIT

A necessary preface to Plaintiff's third and final claim is that the FLSA requires employers to pay employees a minimum wage of $7.25 an hour for any hours worked on or after July 24, 2009. *See* 29 U.S.C. §206(a)(1)(c). However, under section 203(m), employers are permitted to take

---

[5] *See also Mutreja v. U.S. Dept. of Justice*, No. 3-06-CV-0672-B, 2006 WL 2859308, at *2 n. 2 (N.D. Tex. Sept. 15, 2006)("Defendant's argument that this action is barred by a prior settlement agreement between the parties is in the nature of an affirmative defense on which defendant has the burden of proof at trial.").

advantage of a "tip credit" in order to meet the federal minimum wage requirements with respect to "tipped employees." *See* 29 U.S.C. §203(m)(1)-(2). A "tipped employee" is defined as "any employee engaged in an occupation in which he 'customarily and regularly' receives more than $30 a month in tips. " *See* 29 U.S.C. §203(t). Under this "tip credit rule," an employer may instead pay a tipped employee $2.13 per hour, but only if the employee makes at least the minimum wage when the wages paid and the tips earned are combined. *Id.* "In other words, [under 29 U.S.C. § 203(m),] the employer may take credit for an employee's tips to make up the difference between the cash wage of $2.13 [the employer] pays and the minimum wage [the employer] owes its wait staff." *Chisolm v. Gravitas Rest. Ltd.*, No. H-07-475, 2008 WL 838760, at *2 (S.D. Tex. March 25, 2008).

Applicable to the present controversy before the Court, the employer is required to satisfy the following two statutory prerequisites in order to utilize the "tip credit"allowance: (1) the employer must inform the employee of the provisions in section 203(m); and (2) all tips received by an employee must be retained by the employee, "except that [§203(m)] shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *See* 29 U.S.C. §203(m). If the employer fails to meet either of these requirements, it is not eligible to claim the tip credit, and in such a case, the employer must pay each employee the full minimum wage of $7.25 an hour that is required under section 206. *See Bernal v. Vankar Enter., Inc.*, No. SA-07-CA-695-XR, 2008 WL 791963, at *2 (W.D. Tex. March 24, 2008)(Rodriguez, J.); *accord Rousseau v. Frederick's Bistro, LTD*, No. SA-09-CV-651-XR, 2010 WL 1425599, at *2 (W.D. Tex. April 7, 2010)(Rodriguez, J.)("The two requirements must be satisfied if an employer is to be eligible for the tip credit, and if the requirements are not satisfied, the full minimum wage must be paid to the employee."); *Scherrer v. S.J.G. Corp.*, No. A-08-CA-190-SS, 2008 WL 7003809, at *1

(W.D. Tex. Oct. 10, 2008)(Sparks, J.)("To take 'tip credit' an employer is obliged to comply with these prerequisites, and the prerequisites are strictly construed.").

In the present case, Defendant has expressly claimed a tip credit under section 203(m): "Alligator Grill paid the legal minimum wage for a customarily tipped employee, which is $2.13 per hour, with the remainder being made up of tips received by the employee. Alligator Grill did claim the allowed FLSA tip credit up to the minimum wage at the time." *See* Def. Answer (Doc. #23) at ¶8. Plaintiffs, on the other hand, contend that Defendant is not entitled to claim a tip credit because Defendant has not satisfied either of the two mandatory requirements mandated in section 203(m).

### 1. FIRST REQUIREMENT OF SECTION 203(m): THE EMPLOYER MUST INFORM THE EMPLOYEE OF THE PROVISIONS IN SECTION 203(m)

As a threshold matter, Defendant objects that "Plaintiff failed to allege in any of their complaints that Defendant violated the FLSA by not informing their employees of the tip credit provisions, and cannot now seek summary judgment on an issue that was not alleged." *See* Def. Sur-Reply at 1 and 3-4. Plaintiffs rebut that "[b]ecause Plaintiffs were not informed of the FLSA's tip credit provisions, Plaintiffs moved for summary judgment on this element of Alligator Grill's tip credit *defense*." *See* Pl. Reply at 3 (italics added). The Court agrees that Plaintiffs were not required to plead a violation of section 203(m). Rather, Defendant must prove the facts necessary to take advantage of its claimed "tip credit."

### a. THE BURDEN IS ON DEFENDANT TO PROVE THE APPLICABILITY OF THE SECTION 203(m) EXCEPTION

The plain language of section 216 creates a private right of action against any employer who violates section 206 (minimum wage requirements) or section 207 (overtime compensation

requirements) of the FLSA. *See* 29 U.S.C. §216(b)( "[a]ny employer who violates the provisions of

section 206 or section 207 of this title shall be liable to the employee or employees affected . . .").

Notably, section 216 does not provide a cause of action for a violation of section 203(m). *See*

*generally* 29 U.S.C. §216(b). Likewise, section 216 allows employees to recover "the amount of

their unpaid minimum wages, or their unpaid overtime compensation" from "[a]ny employer who

violates the provisions of section 206 or section 207 . . ." *See* 29 U.S.C. §216(b). Again, notably,

section 216 does not permit separate damages for a violation of section 203(m). Accordingly, unlike

section 206 and 207, section 203(m) does not constitute an independent cause of action available to

employees under the FLSA. Rather, section 203(m) is a "partial exception [to the minimum wage

requirements of section 206 that] exists for 'tipped employees.'" *Scherrer*, 2008 WL 7003809, at

*1; *See also Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369 (5th Cir. 1973)(noting

that a "statutory exception" appears in 29 U.S.C. §203(m)); DOL Opinion Letter FLSA2009-12 (Jan.

15, 2009)(noting "the tip pooling *exception* in 29 U.S.C. 203(m)"); DOL Opinion Letter, 1997 WL

998047 (Nov. 4, 1997)(describing section 203(m) as an "exception from the tip-retention

requirement").

 With regard to statutory exceptions, the United States Supreme Court has explained that "the

general rule of statutory construction that the burden of proving the justification or exemption under

a special exception to the prohibitions of a statute generally rests on one who claims its benefits . .

." *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948). Therefore, it holds true that:

> When a proviso . . . carves an exception out of the body of a statute . . . those
> who set up such exception must prove it (citations omitted). That
> longstanding convention is part of the backdrop against which the Congress
> writes laws, and we respect it unless we have compelling reasons to think that
> Congress meant to put the burden of persuasion on the other side.

*Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 128 S.Ct. 2395, 2400 (2008)(identifying affirmative defenses contained in the ADEA after delineating between statutory prohibitions and exemptions). Accordingly, the Supreme Court has explicitly stated that "the general rule [is] that the application of an exemption[6] under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-197 (1974). As explained above, there is no hint in the text of section 216 or section 203(m) that Congress intended section 203(m) "to march out of step with either the general or specifically FLSA default rules placing the burden of proving an exemption[7] on the party claiming it." *Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84, 128 S.Ct. 2395, 2401 (2008).

In line with this reasoning, the Fifth Circuit Court of Appeals recounted that "[o]n May 1, 1974, the Act was amended to place the burden of proving the amount of tips received *on the employer* for purposes of allowing the fifty percent tip credit." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)(italics added). The Fifth Circuit explicated that in order "to

---

[6] This Court acknowledges that section 203(m) is an *exception* and not a section 213 *exemption*. *See* Department of Labor Handbook § 30d00b ("Since [29 U.S.C. § 203(m)] is not an exemption from the [minimum wage] . . ."). However, the Fifth Circuit has previously rejected this distinction as grounds for shifting the burden onto the employee plaintiff.

In *Foremost Dairies, Inc. v. Wirtz*, the district judge found that all of the employees worked a minimum of forty hours a week or more, and that the employer had failed to satisfy its burden of proof that the duties of these employees necessitated "irregular hours of work" within the meaning of what is now section 207(f) of the FLSA. *Foremost Dairies, Inc. v. Wirtz*, 381 F.2d 653, 656 (5th Cir. 1967). The district judge cited several cases in support of the principle that an employer who claims an exemption under the Act has the burden of showing that it applies. *Id.* at n. 4. On Appeal, the employer argued that the authorities cited were inapplicable because the authorities refer to section 13 exemptions, and that Section 207(f) does not provide for an exemption but is an exception. *Id.* The Fifth Circuit Court of Appeals rejected the employer's argument, explaining that **"[i]t is correct that 7(e) provides an exception rather than an exemption but we see no essential difference between the two insofar as the law relating to burden of proof is concerned."** *Id.* (emphasis added).

[7] *Supra* note 6.

implement this policy," Congress added the following statutory language, which is at issue now: the tip credit "shall not apply with respect to the tipped employee unless (1) such employee has been informed of this subsection, and (2) all tips received by such employee have been returned by the employee . . ."). *Id.*[8]

More recently, the district courts within the Fifth Circuit that have considered the issue have unanimously concurred that "Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits." *Bernal v. Vankar Enter., Inc.*, 579 F.Supp.2d 804, 808 (W.D. Tex. Sept. 30, 2008); *See also Lewis v. Adams Sys., LLC*, No. H-08-2009, 2008 WL 4858356, at *3 (S.D. Tex. Nov. 10, 2008)("The employer bears the burden of proving the validity of an employee tip pool . . ."); *Chisolm*, 2008 WL 838760, at *3 ("the employer, bears the burden of proving its entitlement to a tip credit."); *Reich v. Priba Corp.*, 890 F.Supp. 586, 596 (N.D. Tex. March 27, 1995)("the court concludes that [the employer] failed to prove, by a preponderance of the evidence, the existence of a valid tip pool arrangement between employees as defined by § 3(m) of the FLSA, 29 U.S.C. § 203(m).").

For all of the above reasons, Defendant's procedural objection is overruled. As such, Plaintiff was only required to plead a violation of the minimum wage provisions contained in section 206, and the burden to prove that the requirements of the tip credit exception contained in section 203(m)

---

[8] Additionally, the Fifth Circuit has consistently placed the burden of proving other exceptions to the FLSA upon the employer. *See, e.g., Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264 (5th Cir.2000)(the employer "has the burden of affirmatively showing that its employees come within the exceptions to the FLSA's overtime provisions."); *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 265 (5th Cir. 1998)("The employer bears the burden to show that meal time qualifies for this exception from compensation."); *Blackshear v. City of Houston*, No. 96-20280, 1997 WL 450086, at *1 (5th Cir. July 8, 1997)("The City asserted and has the burden of proving that Blackshear falls within this exception.").

were met rests upon Defendant.[9] This Court will proceed to review Defendant's claim to a tip credit exception, and in doing so, the Court will adhere to the Fifth Circuit's instruction that "[e]xemptions from or exceptions to the Act's requirements are to be narrowly construed against the employer asserting them." *Donovan v. Brown Equip. and Serv. Tools, Inc.*, 666 F.2d 148, 153 (5th Cir. 1982).

### b.   DEFENDANT FAILED TO INFORM EMPLOYEES OF THE SECTION 203(m) PROVISIONS

In an effort to satisfy the first section 203(m) requirement, Defendant argues that "every single class member in this case was aware of the tip credit provisions." *See* Def. Resp. at 2. First and foremost, the problem with Defendant's argument is that section 203(m) does not require employees to be *aware of* the tip credit provisions. Rather, section 203(m) affirmatively requires employers *to inform* employees of the provisions contained in section 203(m). *See* 29 U.S.C. §203(m). Perhaps failing to recognize this fact, Defendant proffers as evidentiary support that "[t]he job applications of many of the servers who are part of this suit indicate that the expected salary is $2.13 per hour," which Defendant contends is "direct evidence that applicants understood what they were getting paid." *See* Def. Resp. at 5. An independent review of the five employment applications

---

[9] Even if Plaintiffs were required to plead that Defendant violated the FLSA by not informing their employees of the tip credit provisions, *i.e.* the first tip credit requirement of section 203(m), Plaintiffs' claim would nevertheless remain viable because Plaintiffs did plead in their Third Amended Complaint that Defendant violated the second tip credit requirement of section 203(m). *See* Pl. Third Am. Compl. (Doc. #21) at ¶¶ 11-12. As noted above, "[i]f an employer fails to meet both prerequisites it is not eligible to take the tip credit and must pay each employee the full minimum wage required under section 206." *Bernal*, 2008 WL 791963, at *2. Thus, even if Plaintiffs were required to plead and prove the first requirement contained in section 203(m), Plaintiffs can nevertheless affirmatively establish a violation of the second requirement, which is sufficient.

submitted[10] merely reveals that each employee entered either "$2.13" or "$2.13 + tips" in the box entitled "Salary Desired." *Id.* at Ex. B. Evidence that, before being hired as employees, five applicants requested an hourly wage of $2.13 per hour plus tips is simply not evidence that the "employee has been informed by the employer of the provisions of [section 203(m) of the FLSA]" as required under the statute. *See* 29 U.S.C. 203(m). "The language of the statute is clear. An employer is obliged to comply with the prerequisites of announcing its intention to take the tip credit and allowing employees to keep all tips they earn except what is pooled for the benefit of customarily tipped employees . . ." *Bernal*, 2008 WL 791963, at *3. Therefore, "[t]hat an employee 'expected to earn and retain their tips . . . does not suggest even mildly that [the employee] knew anything of the minimum wage laws or defendants' intention to claim a tip credit against their obligations." *Holder v. MJDE Venture, LLC*, No. 1:08-CV-2218-TWT, 2009 WL 4641757, at *2 (N.D. Ga. Dec. 1, 2009)(quoting *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir.1992)).

The Court acknowledges that "[e]mployers do not have to 'explain' the tip credit to employees . . . it is enough to 'inform' them of it." *Lentz v. Spanky's Rest. II, Inc.*, 491 F.Supp.2d 663, 673 (N.D. Tex. 2007)(quoting *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *19 (S.D.N.Y.2006)). Nevertheless, the employment applications submitted are not probative evidence that Defendant even, at a minimum, *informed* Plaintiffs of its intent to implement the tip credit provisions of section 203(m). At best, the employee applications are evidence that these five

_____

[10] Defendant has submitted the employment applications of: (1) Jacquelyn Pedigo; (2) Victorian Adrian; (3) Angela Fotiades; (4) Kasey Herber; (5) Holly Ruggiere. *See* Def. Ex. B. On December 24, 2010, each of these individuals filed a notice of consent to join this collective action. *See* Clerk's Docket #10. However, on April 22, 2009, the parties filed an agreed motion to dismiss Adrian Victorian without prejudice. *Id.* at # 18. The Court subsequently granted the motion to dismiss on April 23, 2009. *Id.* at #19. Thus, only four of the five applications submitted belong to Plaintiffs in this class action.

employees were familiar with the use of a tip credit in the restaurant industry. However, if this Court "were to permit Defendants to substitute their statutory responsibility for an alleged general awareness of an industry-wide practice, the notice prerequisite of section 203(m) would be satisfied in every instance, and section 203(m) would be rendered mere surplusage." *Bernal v. Vankar Enter., Inc.*, 579 F.Supp.2d 804, 809 (W.D. Tex. Sept. 30, 2008)(Rodriguez, J.)(rejecting the defendant's argument that "that its servers were aware that Defendants would take tip credits because the practice is 'industry standard.'").

Moreover, even assuming entirely *arguendo* that the employment applications do represent dispositive evidence that Defendant informed five employees of the provisions in section 203(m), Defendant would still not satisfy its burden. The present class action has one class representative and twenty-two opt-in claimants.[11] Yet, Defendant has only submitted the applications of the class representative and three opt-in claimants.[12] Thus, there is no evidence that Defendant informed the remaining nineteen opt-in claimants about the provisions of section 203(m). This directly contradicts Defendant's contention that "every single class member in this case was aware of the tip credit provisions." *See* Def. Resp. at 2.

Conversely, there is affirmative evidence that Defendant did not inform its employees of section 203(m). The "Alligator Grill Team Member Manual" admonishes its employees that "[t]ips or suggestions about tipping will not be discussed in The Grill[13] *at any time*." *See* Pl. Ex. 6 at 7

---

[11] *Supra* note 1.

[12] *Supra* note 10.

[13] The Alligator Grill is referred to as "The Grill" throughout both the "Team Member Manual" and the "Training Manual." *See generally* Pl. Ex. 6 and Def. Ex. E ("Steve Wimberly bought 'The Grill' in 5/1/04 . . .").

(emphasis added). Also noteworthy is the fact that the "Alligator Grill Team Member Manual" contains a section entitled "Timeclock, Payroll, Tips," but the employee manual nevertheless fails to provide any information pertaining to a tip credit. *Id.* at 5. On this note, Steven Wimberly (hereinafter "Mr. Wimberly"), owner of Alligator Grill, testified that Dave Gebser (hereinafter "Mr. Gebser") is responsible for ensuring that Alligator Grill is in compliance with the FLSA. *See* Pl. Ex. 7 at 27:5-17. Yet, Mr. Gebser testified that he does not inform the employees about the provisions in section 203(m). *See* Pl. Ex. 9 at 18:19-25.[14]

Additionally, although not required, Plaintiffs have presented affirmative evidence that Defendant did not inform its employees of section 203(m). Plaintiffs provided the sworn declaration of five servers providing the same testimony that Defendant did not fulfill its requirements under section 203(m): "No one from Alligator Grill explained the 'tip credit' to me or notified me that Alligator Grill would use my tips to make up the difference between the $2.13/hour I was paid and the fill statutory minimum wage." *See* Pl. Ex. 1 at ¶3; Pl. Ex. 2 at ¶3; Pl. Ex. 3 at ¶3; Pl. Ex. 4 at ¶3; Pl. Ex. 5 at ¶3. Opt-in Plaintiff Tracy Barabarosa (hereinafter "Plaintiff Barbarossa") states that she "learned of the 4% tip poll requirement when [she] received [her] first paycheck in March 2007 when [she] notice[d] that [she] had not received 100% of the tips [she] earned during the pay period." *See* Pl. Ex. 2 at 4. According to Defendant, Plaintiff Barbarossa testified that she "didn't

---

[14] Defendant admits that "Mr. Wimberly and Mr. Gebser did not speak to the servers about the tip credit provisions," but Defendant attempts to mitigate this fact by complaining that "when given an opportunity to ask Paul Blandford, the general manager of the restaurant, if he informed the servers of the tip credit provision, Plaintiffs' attorney did not do so." *See* Def. Resp. at 5. As discussed above, the burden is upon Defendant to prove that it did inform its servers of the provisions of section 203(m). Therefore, the alleged failure of Plaintiffs' counsel to ask a question in a deposition will not create a genuine issue of material fact. Moreover, on this note, Defendant seems to imply that Paul Blandford would have testified the he informed the servers of the tip credit provisions, but Defendant nevertheless has not provided an affidavit, a sworn declaration or deposition testimony from Paul Blanford stating he did, in fact, inform the employees of the tip credit policy. Therefore, Plaintiff has failed to carry its burden on this issue of fact.

remember what she was told about her duties, her pay, and how it is going to work, but . . . did

remember being told that there was an hourly rate of $2.13," which is "circumstantial evidence that

[employees] were informed of the tip credit provisions." *See* Def. Resp. at 5 (*citing* Barbarossa depo

at p. 6:22-25 and 7:1-4). Again, evidence that one opt-in claimant did not remember what she was

told "about her pay" is not affirmative evidence that Defendant informed its employees  and all of

the opt-in plaintiffs about the provisions in section 203(m).

For all of the above reasons, Defendant has failed to carry its burden of proving that it

informed Plaintiffs of the provisions contained in section 203(m) of the FLSA. As interpreted by the

Supreme Court, the summary judgment standard of review mandates the entry of summary judgment

"against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case and upon which that party will bear the burden of proof at trial."

*Celotex Corp.*, 477 U.S. at 318. Accordingly, Plaintiffs are entitled to summary judgment on this

issue. Regardless, Plaintiffs have satisfied any conjectural burden they possessed to produce evidence

on this matter.

2.      **SECOND REQUIREMENT OF SECTION 203(m): TIPS MAY
NOT BE POOLED AMONG EMPLOYEES WHO DO NOT
CUSTOMARILY AND REGULARLY RECEIVE TIPS**

As noted above, the second requirement contained in section 203(m) is that all tips received

by an employee must be retained by the employee, except that an employer may require an employee

to pool tips with "employees who customarily and regularly receive tips." *See* 29 U.S.C. § 203(m).

Stated differently, if the tipped employees are required to share their tips with any employee who

does not "customarily and regularly receive tips" then the employer cannot claim any tip credit under

section 203(m). As explained in detail below, Plaintiffs claim that the inclusion of preparation cooks

and dishwashers in the tip pool violates this second section 203(m) requirement.

### a.    THE ALLIGATOR GRILL TIP POOL

The servers and bartenders are the only Alligator Grill employees who receive tips directly from customers. *See* Pl. Ex. 8 at 46:1-6. In September of 2005, Mr. Steven Wimberly, owner of Alligator Grill, instructed David Gebser, the employee in charge of record-keeping and payroll, "to set up a mandatory tip pool that was acceptable under the rules and standards that are published by the United States Department of Labor." *See* Wimberly Aff. (Doc. #63) at ¶4; Gebser Aff. (Doc. #63) at ¶4. Per this instruction, Mr. Gebser "did research on [the DOL] web site and reviewed the site and the rules it had for a mandatory tip pool" in order "to make sure the tip pool complied with the regulations of the United States Department of Labor." *See* Gebser Aff. (Doc. #63) at ¶6. After conducting this preliminary research, Mr. Gebser concluded that he would include "those employees and positions . . . who had contact with customers, and also those employees and positions who had customarily received tips or a share of the tips in the past." *Id.* at ¶7. Yet, Mr. Gebser also states that his "determination of which employees would receive a share of the tip pool was based on their [job title] payroll codes," *i.e.* "Host, Busser, AM Expo and PM Expo." *Id.* at ¶8.

Pursuant to Mr. Wimberly's instruction, the Alligator Grill "Team Member Manual" now explicitly requires every server and bartender to contribute a portion of their tips equal to 4% of their total net sales to a mandatory tip pool. *See* Pl. Ex. 6 at 5. The "Team Member Manual" does not specify which employee positions are the recipients of the tip pool, but Mr. Gebser clarified that he previously included dishwashers and preparation cooks, among other positions,[15] in the tip pool

---

[15] The summary judgment evidence reveals that Defendant also included the following employee positions in the tip pool: (1) hostesses; (2) expediters (expos); and (3) bar backs. *See* Def. Ex. A at 38:19-23; Def. Ex. B at 29:14-30:2; Pl. Ex. 8 at 58:1-9; and Def. Resp. (Doc. #63). Looking to Plaintiffs' live

because these positions "had customarily received tips or a portion of the tip share . . ." *Id.*; Pl. Ex. 8 at 57:3-6; Gebser Aff. (Doc. #63) at ¶9.[16] Notably, Defendant does not assert that the dishwashers and preparation cooks have any "contact with customers," which is the other criteria Mr. Gebser allegedly considered when creating the tip pool. *See* Gebser Aff. (Doc. #63) at ¶7

Defendant now reports that on October 21, 2009, it removed dishwashers and preparation cooks from participation in the tip pool "[i]n an abundance of caution, and after consulting with the attorneys for 3003 South Lamar, LLP." *See* Wimberly Aff. (Doc. #63) at ¶9; Gebser Aff. (Doc. #63) at ¶11. However, during the approximately four years when dishwashers and preparation cooks were included in the tip pool, the dishwashers and preparation cooks received their share of the servers' and bartenders' tips in a paycheck every two weeks, and they also received a separate paycheck which consisted of their hourly wage multiplied by the number of hours worked during the pay

---

Complaint and Plaintiffs' current pleadings before the Court, Plaintiffs are not claiming that hostesses and/or expediters are ineligible to participate in the tip pool.

In their current motion, Plaintiffs only complain about the inclusion of dishwashers, prep cooks and non-service bar backs. *See* Pl. Mot. at 12 ("Because the dishwashers, prep cooks, and non-service bar backs do not customarily and regularly receive tips, Alligator Grill cannot claim a tip credit against its minimum wage obligation to the servers."); *See also* Pl. Third Am. Compl. at ¶11 ("The Alligator Grill's tip pool did not meet the requirements of a valid tip pool because a portion of the tips are retained by the restaurant and/or distributed to ineligible employees."). . However, Plaintiffs do not complain about the inclusion of bar backs in either their Reply or Response to Defendant's Sur-Reply. *See* Pl. Reply at 4 ("Alligator Grill included dishwashers and prep cooks in its mandatory tip pool."); Pl. Resp. to Def. Sur-Reply at 4("Plaintiffs pointed out that Alligator Grill's inclusion of dishwashers and cooks violated the FLSA."). To the extent Plaintiffs seek to persist with their claim that it is impermissible to include barbacks in the tip pool, the Court concludes that a question of fact remains on this specific issue. Regardless, the tip pool is invalid for the inclusion of preparation cooks and dishwashers.

[16] Directly contrary to the information provided in the Court-ordered affidavits (Doc. #63), Steven Wimberly, David Gebser and Paul Blandford all testified in their depositions that the only "indirectly tipped" employees that are included in the tip pool are hostesses, bussers, expediters and barbacks. *See* Def. Ex. A at 38:19-23; Def. Ex. B at 29:14-30:2; Pl. Ex. 8 at 58:1-9. In particular, Mr. Wimberly testified in his deposition that no kitchen employee, including cooks and dishwashers, are included in the tip pool because Mr. Wimberly's understanding of section 203(m) is that the employee must "be involved in service of some type" to participate in the tip sharing. *See* Def. Ex. A (Doc. #52) at 38:24-39:11.

period. *See* Pl. Ex. 8 at 55:12-22.

As noted, Plaintiffs now claim that the problem with Defendant's previous compensation system was that the dishwashers and preparation cooks were impermissibly included in the tip pool because these employees do not "customarily and regularly" receive tips as required under section 203(m), and for this reason, Defendant was not entitled to claim a tip credit exception. *See* Pl. Mot. at 11-12. In response, Defendant concedes that "kitchen employees are generally not permitted to participate in a tip pool." *See* Def. Resp. at 5. Defendant nonetheless argues that the "determination of the eligibility of any given employee is based on the job duties of that employee," rather than the employee's job title. *Id.* The Court will review each party's arguments in turn.

The Code of Federal Regulations expounds that the phrase "'customarily and regularly' signifies a frequency which must be greater than occasional, but which may be less than constant." *See* 29 C.F.R. §531.57. Notwithstanding this definitional guidance, "[n]either the language of FLSA nor the relevant regulations provide much clear guidance regarding which employees or occupations may participate in mandatory tip pools or tip sharing arrangements. . ." *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 WL 2714079, at *6 (S.D. Tex. July 9, 2008). Although the statute is not explicit on the issue, legislative history and DOL interpretations do expressly dictate that dishwashers and preparation cooks do not customarily and regularly receive tips.

Specifically, in a report on the 1974 amendments to Section 203(m), the Senate Committee on Labor and Public Welfare explained that "the employer will lose the benefit of th[e] [section 203(m)] exception if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips-*e.g.*, . . . *dishwashers, chefs* . . . etc." *See* S. Rep. 93-690, at

43 (Feb. 22, 1974)(italics added).  The Department of Labor Field Operations Handbook[17] echoes

the Senate Report, noting that dishwashers, chefs and cooks are examples of employees who are not

eligible to participate in tip pooling arrangements. *See* Dept. Labor Field Operations Handbook

Ch.30, §30d04(a) (Dec. 9, 1988).  Finally, the DOL Wage and Hour Division subsequently reiterated

in a 1997 Opinion Letter[18] that:

> . . . an employer will lose the benefit of the exception from the tip-retention
> requirement if tipped employees are required to share their tips with
> employees who do not customarily and regularly receive tips, such as . . .
> *dishwashers*, [or] *chefs* . . . where a tipped employee, as a condition of his or
> her employment, is required to share tips with other employees (e.g.,
> dishwashers) who do not meet the definition of a tipped employee, the tip
> pool is invalid.

*See* DOL Opinion Letter, 1997 WL 998047 (Nov. 4, 1997)(brackets and italics added but

---

[17] "The Field Operations Handbook (FOH) is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance. The FOH was developed by the WHD under the general authority to administer laws that the agency is charged with enforcing. The FOH reflects policies established through changes in legislation, regulations, court decisions, and the decisions and opinions of the WHD Administrator. Further, the FOH is not used as a device for establishing interpretative policy." *See* United States Department of Labor: Wage and Hour Division, http://www.dol.gov/whd/foh/index.htm (last visited June 16, 2010).

[18] "Opinion letters, which are issued without the formal notice and rulemaking procedures of the Administrative Procedure Act, do not receive the same kind of *Chevron [U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984)] deference as do administrative regulations." *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 524-525 (5th Cir. 1999). Absent ambiguity, "[i]nterpretations contained in formats such as opinion letters are 'entitled to respect' under [the Supreme Court's] decision in *Skidmor v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L.Ed. 124 (1994), but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)(quoting *Skidmor v. Swift & Co., 323 U.S. 134 (1994)); Moore v. Hannon Food Serv., Inc.*, 317 F.3d 489, 497 (5th Cir.2003). Thus, "[i]nterpretive and opinion letters by the Department of Labor do not per se bind the court. Such materials, however, do 'constitute a body of experienced and informed judgment' and the court will give these materials 'substantial weight.' " *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 638 (5th Cir.2001)(citation omitted).

   Accordingly, in the present case, both parties have cited opinion letters in an effort to persuade the Court. Thus, absent objections from either party, while DOL opinion letters are not binding on this Court, the Court finds that they are persuasive and reasonable interpretations of the statutes and regulations relating to the legal issue presented in this case.

parenthetical in original).[19] In sum, all of the foregoing persuasive authorities list dishwashers and cooks as examples of positions that may *not* be included in a valid tip pool arrangement under section 203(m).

This Court remains mindful of the foregoing guidance in its analysis. However, at the same time, this Court is of the opinion that because the statute itself does not expressly enumerate the employees or occupations that are excluded from a tip pool under section 203(m), a determination of an employee's eligibility to participate in a tip pool requires an *ad hoc* analysis of an employee's duties, rather than a *per se* determination based upon an employee's job title. *See Roussell*, 2008 WL 2714079, at *10; *See also Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d 663, 671 (N.D. Tex. May 31, 2007)("[T]ip pools in which some employees receive money from the pool without contributing to it are not per se invalid.").

The Southern District of Texas, a sister court of like mind on the issue,  cogently explained that the level of customer interaction is highly relevant to the question of whether an employee may participate in a valid tip pool because "the degree of direct customer interaction distinguishes to some extent the employees identified by the Senate and the Department of Labor as eligible to participate in a mandatory pool from the kind of employees that are not eligible to participate in such a pool." *Roussell*, 2008 WL 2714079, at *10. Yet, the Southern District of Texas also acknowledged that an employee might be considered to "perform important customer service functions" even if the employee does not directly interact with customers. *Id.* Based upon this reasoning, the Court explained that the inquiry regarding a valid tip pool requires:

---

[19] The Sixth Circuit Court of Appeals has similarly explained in dicta that "[o]ne can distinguish hosts from restaurant employees like *dishwashers, cooks* . . . who do not directly relate with customers at all." *Kilgore v. Outback Steakhouse of Fla., Inc.*, 169 F.3d 294, 301 (6th Cir. 1998)(italics added).

> . . . an examination of the employees' overall duties, as well as the extent of
> their direct customer interaction. If employees have more than minimal
> customer interaction and perform important customer service functions . . .
> they may participate in a mandatory tip pool. Employees also may be eligible
> to participate in a mandatory tip pool even if they have only minimal
> customer interaction, as long as their primary duties entail important
> customer service functions. Where employees perform some duties that entail
> customer service and others that do not, the employees' level of direct
> customer interaction is critical to a determination of whether the employee
> may participate in a mandatory tip pooling arrangement.

*Id.* This Court concurs with the Southern District of Texas' fact-specific analysis, and therefore, this

Court will individually review Defendant's inclusion of dishwashers and preparation cooks under

this standard.

### b.   DISHWASHERS

In the present case, Defendant has explained that the dishwashers are "back-of -the-house"

employees. *See* Pl. Ex. 8 at 75:1-9. Although it seems obvious, it is necessary to preface for purposes

of this analysis that a dishwasher's "primary job function is to wash dishes." *See* Pl. Ex. 8 at 60:21-

22 and 68:14-17; Pl. Ex. 14 at ¶3. Specifically, the servers "clear dirty dishes, glasses and silverware

from the customers' tables, take them to the kitchen, scrape the uneaten food off the plates, and put

them on the counter or dish rack for the dishwashers. The dishwashers . . . then wash the dirty

items." *See* Pl. Ex. 1 at ¶6; Pl. Ex. 2 at ¶9;  Pl. Ex. 2 at ¶6; Pl. Ex. 4 at ¶6; Pl. Ex. 5 at ¶6.

Additionally, Mr. Gebser and Paul Blandford (hereinafter "Mr. Blandford"), the Alligator Grill

General Manager, both state that every dish washer also has "a regular job duty to shuck oysters and

peel shrimp."[20] *See* Blandford Aff. (Doc. #63) at ¶6; Gebser Aff. (Doc. #63) at ¶9; Pl. Ex. 8 at 4-7.

Finally, only Mr. Blandford maintains that the dishwashers are also "expected to bus tables as

---

[20] Mr. Blandford testified that the dishwashers and the preparation cooks arrive to work early and
perform these duties "before the restaurant opens." *See* Pl. Ex. 8 at 60:24-61:18 and 73:21-25.

needed" and "sometimes perform barback duties." *See* Blandford Aff. (Doc. #63) at ¶6. Mr. Gebser, the employee charged with making decisions about the tip pool, did not testify to knowledge of these bussing and barbacking duties. *See generally* Gebser Aff. (Doc. #63). Nevertheless, unlike shrimp peeling and oyster shucking duties, Defendant does not claim that the dishwashers' regular duties include bussing tables and performing as barbacks.

Defendant has also submitted the affidavits of Frank Kincaid (hereinafter "Mr. Kincaid") and Antonio Martinez (hereinafter "Mr. Martinez"). *See* Def. Ex. C and Ex. D. Mr. Kincaid was hired to work as a dishwasher, but he has also worked as an expediter, and he is currently working as a cook. *See* Def. Ex. D at ¶2. Mr. Martinez was originally hired to work as a dishwasher, but he is currently working as an expediter. Most notably, Mr. Kincaid and Mr. Martinez both state that they have personally "run food to tables." *See* Def. Ex. C at ¶ 3 and Def. Ex. D at ¶3. Only Mr. Kincaid states that he has personally "bussed tables." *See* Def. Ex. D at ¶3. Neither affiant differentiates what positions they held when they delivered food to tables or bussed tables, and neither affiant specifies how often they performed these duties. However, Mr. Kincaid and Mr. Martinez do both specify that they have observed employees working as expos and dishwashers "buss[] tables and run food to tables." *Id.* Neither affiant claims that dishwashers sometimes "perform barback duties" as Mr. Blandford has asserted.

In response, Plaintiffs have presented countervailing evidence. First, Plaintiff Pedigo reports that she "never had a dishwasher bus [her] tables and never saw a dishwasher, or any other employee, bus tables for any other server." *See* Pl. Ex. 1 at ¶6. Second, Plaintiff Barbarossa also directly rebuts that when Mr. Martinez was a dishwasher, he "did not bus tables . . ., did not run food, did not interact with the customers, and did not assist the servers in any way." *See* Pl. Ex. 2 at

¶5. Plaintiff Barbarossa similarly insists that when Mr. Kinkaid was a dishwasher, "[h]e worked solely in the kitchen, washed dishes, glasses and silverware, did not bus tables or run food, and did not have any interaction with the customers." *Id.* at ¶7. Plaintiff Barbarossa recounts that "[i]n the 2 ½ years that I have worked at Alligator Grill, I have never seen a dishwasher go out into the main restaurant area and buss tables, nor have I ever heard of that happening." *Id.* at ¶9. Third, Plaintiff Joshua Roberts also states that he has "never seen a dishwasher come out into the restaurant area and bus tables." *See* Pl. Ex. 3 at ¶5. Fourth, Plaintiff Jacqueline Knight testified that, "I also understand that Paul Blandford, the General Manager, testified that the dishwashers bus the servers' tables. This is wrong . . . the dishwashers do not bus tables for their severs or run food, nor do they interact with the customers at all. Rather, the dishwashers stay in the kitchen." *See* Pl. Ex. 4 at ¶5.

Additionally, Christopher Clontz (hereinafter "Mr. Clontz"), who is *not* an opt-in plaintiff, also provides support for Plaintiffs' assertion that "[n]either the dishwashers nor the prep cooks go out into the dining room to bus tables. Rather, waiters are required to bus their own tables." *See* Pl. Ex. 13 at ¶3. Finally, Ian Terry (hereinafter "Mr. Terry"), who is also *not* an opt-in Plaintiff, rebuts that as a dishwasher, he did not ever bus tables, nor did he ever observe any of the other dishwashers bussing tables. *See* Pl. Ex. 14 at ¶3.

In sum, the uncontroverted evidence reveals that dishwashers' primary duties include washing dishes, shucking oysters and peeling shrimp. In this respect, Defendant does not assert that the dishwashers qualify as recipients under the tip pool for their dish washing duties. Rather, both Mr. Gebser and Mr. Blandford insist that oyster shucking and shrimp peeling "was a great service to both the customers and especially to the wait staff and bartenders, as it allowed those individuals to focus more time on the customers." *See* Gebser Aff. (Doc. #63) at ¶9. Therefore, it is implied,

-25-

although not explicitly stated, that shrimp peeling and oyster shucking constitute important customer service functions. The evidence in dispute reveals that as part of their occasional ancillary duties, dishwashers: (1) bus tables "as needed," (2) have "run food to tables" in the past; and/or (3) perform barback duties "sometimes." *See* Blandford Aff. (Doc. #63) at ¶6.

Even viewing the evidence presented in the light most favorable to Defendant and drawing all justifiable inferences in favor of Defendant, the Court cannot conclude that dishwashers have more than minimal customer interaction.   Furthermore, the Court cannot conclude that the dishwashers' *primary* duties entail important customer service functions.   To the extent that Defendant avers that peeling shrimp and shucking oysters qualify dishwashers as employees that regularly and customarily receive tips for purposes of section 203(m), the Court disagrees. When peeling shrimp and shucking oysters, the dishwashers "abstained from any direct intercourse with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or kitchen support work . . . " *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550 (6th Cir. 1999).[21] Therefore, shrimp peeling and oyster shucking "are more akin to those of the food preparation duties" rather than "duties that are more oriented towards customer service . . ." *Rousell*, 2008 WL 27114079, at *11. Furthermore, even Mr. Wimberly originally testified in his deposition that no kitchen employee, including cooks and dishwashers, are included in the tip pool because Mr. Wimberly's understanding of section 203(m) is that the employee must "be involved in service of some type" to participate in the tip sharing. *See* Def. Ex. A (Doc. #52) at 38:24-39:11.

After an application of the plain language of the statute, legislative history, DOL

---

[21] *Supra* note 20.

interpretations and persuasive case law from this circuit to the unique facts of this case, the Court must conclude that Defendant has failed to carry its burden of proving that Alligator Grill dishwashers regularly and customarily receive tips as required in order to maintain a valid tip pool under section 203(m). Thus, Plaintiffs' are entitled to summary judgment on this issue as well.

### i.   DUAL JOBS: NO TIP CREDIT FOR HOURS WORKED AS A DISHWASHER

With regard to dishwashers' purported duties bussing tables, performing as barbacks and running food to tables, "the legislative history includes bus persons ("busboys") in the list of occupations that may participate in tip pools, although they do not receive tips directly from the customers." *See* DOL Opinion Letter FLSA 2009-12 (January 15, 2009). Additionally, the Department of Labor has stated that a barback may participate in a tip pool when:

> . . . the term "barback" refers to a bartender's assistant who learns the profession of bartending under the tutelage of a bartender and whose primary job duty is to support the bartender. The barback typically works the same hours as the bartender and is responsible for restocking the bar and ensuring that the bar area remains clean and organized. . . [and] the barback may also bus the service counter, clean empty glasses sitting on the bar, take out the trash from behind the bar and clean the floor of the bar area. . . . [and] the barback works primarily in the bar area, in front of and around customers, and has the opportunity to occasionally interact with customers.

*See* DOL Opinion Letter FLSA 2009-12 (Jan. 15, 2009). However, there is no evidence that the dishwashers in the present case fit into the above description of a tipped barback. The evidence here clearly demonstrates that dishwashers perform barback duties infrequently and not as part of their regular duties.[22] Thus, dishwashers are not permitted to be included in the tip pool based upon these alleged ancillary duties. Regardless, even if the Court could conclude that the employees who are

---

[22] Plaintiff is also correct that Defendant does not "even address all the dishwashers identified as ineligible for a tip pool." *See* Pl. Reply at 5.

employed as dishwashers qualified to participate in the tip pool due to their infrequent duties bussing

tables, performing as barbacks and/or delivering food to tables, Defendant has still not maintained

a valid tip pool because no tip credit can be taken for the dishwashers' hours of employment in their

occupation as dishwashers, a non-tipped occupation.

Code of Federal Regulations section 531.56 recognizes that "[i]n some situations an

employee is employed in a dual job." *See* 29 C.F.R. §531.56(e). Section 531.56 distinguishes

between situations: (1) where an employee is "in an occupation that is a tipped occupation" but also

performs related or incidental duties that are not directed towards producing tips; and (2) where an

employee is "in an occupation that is a tipped occupation" but also performs duties that are *not*

related to or incidental to the employee's tip producing duties. *Id.* The Regulations provide that in

the latter situation, "no tip credit can be taken for his hours of employment in his occupation as" a

non-tipped employee, and consequently, the employer can only make use of the tip credit for the time

the employee spends working in his "tipped employee" capacity. *Id.* The Department of Labor Field

Handbook expounds that:

> Reg. 531.56(e) permits the taking of the tip credit for time spent in duties
> related to the tipped occupation, even though such duties are not by
> themselves directed toward producing tips (i.e. maintenance and preparatory
> or closing activities.) For example a waiter/waitress who spends some time
> cleaning and setting tables, making coffee, and occasionally washing dishes
> or glasses may continue to be engaged in a tipped occupation even though
> these duties are not tip producing, provided such duties are incidental to the
> regular duties of the server (waiter/waitress) and are generally assigned to the
> servers. However, where the facts indicate that specific employees are
> routinely assigned to maintenance, or that tipped employees spend a
> substantial amount of time (in excess of 20 percent) performing general
> preparation work or maintenance, no tip credit may be taken for the time
> spent in such duties.

*See* DOL Field Operations Handbook, § 30d00(e). Even Defendant concedes in its Response that

the DOL has "indicated that employees can be included in the tip pool only for the time that they participate in customarily tipped activities." *See* Def. Resp. at 6.

In the present case, the dishwashers are employed in a non-tipped occupation, but also occasionally perform unrelated duties in an arguably tipped occupation(s). More specific to this particular scenario, the DOL explained in a 1997 Opinion Letter that "where an employee employed as a dishwasher performs a variety of different jobs or duties, his or her status as one who 'customarily and regularly receives tips' will be determined on the basis of his or her activities over the entire workweek." *See* DOL Opinion Letter, 1997 WL 998047 (Nov. 4, 1997). Nevertheless, "it is not easy to establish such status for dishwashers." *Id.*[23]

Here, the dishwashers do not "occasionally" wash dishes. Rather, as explained above, the facts indicate that a dishwasher's primary job function over the course of the entire workweek is to wash dishes, and as such, these specific employees are routinely assigned to washing dishes and/or spend a substantial amount of time washing dishes. *See* Pl. Ex. 8 at 60:21-22 and 68:14-17; Pl. Ex. 14 at ¶3. Equally important, the dishwashers' regular duties of washing dishes is not a "tipped occupation." Even the above regulation and Field Handbook excerpts provide this activity as an example of a duty that is "not tip producing." The dishwashers' duties of bussing tables, performing as barbacks and/or running food to tables are, therefore, not "duties related to a tipped occupation." Consequently, Defendant impermissibly utilized the tip credit exception for the time its employees spent working as non-tipped dishwashers. For all of the above reasons, Defendant's tip pool was

---

[23] In the Opinion Letter, the DOL concluded that status as one who 'customarily and regularly receives tips' is not established where, as part of their job description, dishwashers "are required to set up glasses in the customer area during normal service periods, they are called upon to respond to patron requests such as to bring a glass, a napkin, a plate, a condiment, or some other such request." *See* DOL Opinion Letter, 1997 WL 998047 (Nov. 4, 1997).

invalid for the inclusion of dishwashers.

### c.   PREPARATION COOKS

Like dishwashers, Defendant has explained that the preparation cooks are "back-of-the-house" employees. *See* Pl. Ex. 8 at 75:1-9.[24] Again, although seemingly obvious, it is necessary to explain that an Alligator Grill preparation cook's "primary responsibility is . . . to prepare the food for customers." *Id.* at 68:10-13. Specifically, the preparation cook's primary job responsibilities "include[s] assisting the cooks, prepping the food items used by the cooks (i.e. cutting vegetables, making sauces, etc.)." *See* Pl. Ex. 2 at ¶6; Pl. Ex. 8 at 74:9-25. Like the dishwashers, the preparation cook also has "a regular job duty to shuck oysters and peel shrimp."[25] *See* Blandford Aff. (Doc. #63) at ¶6; Gebser Aff. (Doc. #63) at ¶9. Mr. Blanford claims that the preparation cooks also "performed as expos in the restaurant as needed."[26] *See* Blandford Aff. (Doc. #63) at ¶7. Mr. Blanford, however, completely fails to specify in his affidavit what these expo duties entailed. *Id.* Christopher Clontz and Ian Terry,[27] who both currently works as expediters at Alligator Grill,[28] explained that an expediter spends his or her time *in the kitchen* "organizing and traying the food, making sure the orders are correct, garnishing the plates and making sure the plates have a nice appearance before

---

[24] Defendant has not submitted an affidavit or unsworn declaration from any of the preparation cooks.

[25] *Supra* note 20.

[26] The Northern District of Texas maintains that "[t]here is no clear precedent in this circuit or any other circuit that defines expediters as employees who do not customarily and regularly received tips. Thus . . . this is a matter res nova for this Court, and all other courts for that matter." *Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp. 663, 670 (N.D. Tex. 2007).

[27] Ian Terry currently works as an expediter and a bar back. *See* Pl. Ex. 14. Mr. Terry is not an opt-in Plaintiff in this action.

[28] Mr. Clontz works primarily as a waiter. *See* Pl. Ex. 13. Mr. Clontz is not an opt-in Plaintiff in this case.

they are taken to customers." *See* Pl. Ex. 13 at ¶2; Pl. Ex. 14 at ¶4.[29] Unlike shrimp peeling and

oyster shucking duties, Defendant does not claim that the preparation cooks' regular duties include

performing as an expediter.

As noted, Mr. Kincaid states in his affidavit that he formerly worked as a dishwasher and

expediter, but he is "currently working as a cook." *See* Def. Ex. C at ¶2. Mr. Kincaid generally states

that he has "personally bussed tables and run food to tables *during my employment with The*

*Alligator Grill*," but Mr. Kincaid does not state that he performed these duties while employed as

a cook. *Id.* at ¶3 (italics added). Additionally, Mr. Kincaid specifically states that he has "observed

other employees working as expos and dishwashers [buss tables and run food to tables]," but Mr.

Kincaid does not state that he has ever observed a *preparation cook* perform these duties. *Id.* Mr.

Martinez also notes that as either a dishwasher or an expediter he has "personally run food to tables,"

and "observed other employees working as expos and dishwashers do the same." *See* Pl. Ex. D at

¶3. However, Mr. Martinez does not state that he has ever observed a *preparation cook* perform

these duties. *Id.* Accordingly, neither of these affidavits constitute evidence that the preparation

cooks ever bus tables or deliver food to tables. *See generally* Def. Ex. C and D.

Even viewing the evidence in the light most favorable to Defendant, the Court must conclude

that the preparation cooks work in the kitchen and do not have more than minimal customer

interaction. The evidence also reveals that the preparation cooks' primary duties do not entail

important customer service functions. In sum, there is no evidence that the preparation cooks

---

[29] Mr. Blanford stated in his deposition that expediters, not cooks performing the duties of expediters, also "run food out to the servers' tables." *See* Pl. Ex. 8 75:22-76:4. Mr. Blanford does not state in his Court-ordered affidavit that cooks deliver food to tables. *See* Blandford Aff. (Doc. #63). Mr. Clontz and Mr. Terry both maintain that expediters do not "run food to the waiters' tables." *See* Pl. Ex. 13 at ¶2.

perform any regular duties that would qualify them for participation in Defendant's section 203(m) tip pool. Accordingly, an application of the plain language of the FLSA, legislative history, DOL interpretations and persuasive case law from this circuit to the unique facts of this case dictates that Defendant has failed to carry its burden of proving that Alligator Grill preparation cooks regularly and customarily receive tips as required under section 203(m). Thus, Plaintiffs are entitled to summary judgment. Nevertheless, even if Defendant may claim a tip credit for any conjectural expediting duties, no tip credit may be taken for the time these employees spent as preparation cooks, and therefore, Defendant's tip pool was invalid.

As a final matter, Mr. Blandford asserts in his Court-ordered affidavit that "The Alligator Grill was audited by the United States Department of Labor. During the course of the audit, the tip pool was discussed with the auditor. The audit did not result in a finding that there was an improper tip pool." *See* Blandford Aff. (Doc. #63) at ¶13. Defendant is correct that Investigator Haro conducted an investigation of Defendant's compliance with the FLSA for the time period of April 2, 2007 until April 1, 2009. *See* Def. Ex. A (March 15, 2009 Letter from U.S. DOL). However, according to Mr. Gebser's deposition, when asked, he did not inform Investigator Haro that Alligator Grill's tip pool included dishwashers and preparation cooks. Rather, Mr. Gebser only informed the DOL investigator that the tip pool included "the hostess, the expos, and the bussers/barbacks" *See* Def. Ex. B at 29:7-30:5. In fact, Mr. Wimberly, Mr. Blandford and Mr. Gebser all failed to disclose in their depositions that dishwashers and preparation cooks were included in the tip pool. Rather, these individuals did not explicitly disclose this fact until the Court ordered these three individuals to file affidavits "definitively stating whether or not dishwashers, prep cooks and non-service barbacks are currently included or ever have been included in the tip pool that is at issue in this

case." *See* Clerk's Docket #s 61 and 63. Accordingly, Mr. Gebser's assertion is not probative evidence of Defendant's compliance with the FLSA.

### E.   DAMAGES SHALL BE REFERRED TO MEDIATION

Finally, "Plaintiffs moved for summary judgment on the damages that can be calculated at this time." *See* Pl. Reply at 5. Specifically, Defendant has produced payroll and time records for 13 of the 23 Plaintiffs. Plaintiffs, therefore, request the Court to award the minimum wage and overtime amounts owed and an additional amount of liquidated damages to these 13 Plaintiffs. *See* Pl. Mot. at 15-16. Plaintiffs, however, do not seek to recover attorneys' fees at this time. *Id.* at 16 n. 12. After thoroughly considering Plaintiffs' request, the Court concludes that it will only enter summary judgment as to liability at this time. *See* Fed. R. Civ. P. 56(d)(2)("[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."). The Court will refer the issue of damages to mediation.

"FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b)." *Villeda v. Landry's Rests., Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009)(citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir.1982)). "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Villeda*, 2009 WL 3233405, at *1 (quoting *Lynn's*, 679 F.2d at 1354). Therefore, at this time, the Court will withhold a decision on damages, and instead, refer this last remaining issue to mediation. *See* L.R. 88(c)(the Court "may refer a case to ADR . . . on its own motion." ). However, the parties are hereby ordered to mediate damages as to *all* Plaintiffs in the above-entitled case. Additionally, the parties shall also mediate the issue of attorneys' fees. *See* L.R. CV-7(i)("Counsel for the parties shall meet and confer for the

purpose of resolving all disputed issues relating to attorney's fees prior to making application."). The parties shall adhere to each of the mandates contained in Local Rule 88, but the Court makes specific note that per the local rule, "[i]n addition to counsel, party representatives with authority to negotiate a settlement, and all other persons necessary to negotiate a settlement, including insurance carriers, must attend the ADR session." *Id.* at 88(d). Finally, "[i]f the parties agree upon an ADR method or provider, the Court will respect the parties' agreement . . . If the parties are unable to agree on an ADR provider, the Court will select a provider." *Id.* at 88(c).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. #47) is hereby **GRANTED IN PART AND DENIED IN PART.** Plaintiffs' Motion is granted insofar as Plaintiffs seek summary judgment on liability as to each of their claims under the FLSA. Plaintiffs' Motion is denied insofar as Plaintiffs seek summary judgment on damages.

**IT IS FINALLY ORDERED** that the parties shall mediate the issue of damages and attorney's fees, and the parties shall thereafter submit an Alterative Dispute Resolution Report to the Court on or before **Monday, July 19, 2010.**

SIGNED this _17th_ day of June 2010.

JAMES R. NOWLIN
UNITED STATES DISTRICT JUDGE